JURATE FEARS, Plaintiff-Appellant, *v.* GARY FEARS, Defendant-Appellee.

(No. 71-114;

Fifth District—May 5, 1972.

*Rehearing denied June 8, 1972.*

Sprague, Sprague and Ysursa, of Belleville, (John R. Sprague and N. Dean Nester, of counsel,) for appellant.

Dick H. Mudge, Jr., of Edwardsville, for appellee.

Mr. JUSTICE CREBS delivered the opinion of the court:

On October 30, 1969, Plaintiff, Jurate Fears, obtained a divorce from Defendant, Gary Fears, wherein the court awarded custody of the minor child of the parties to Plaintiff, pursuant to stipulation of the parties. On June 29, 1970, Plaintiff filed a petition to modify the decree of divorce, stating therein her intention to remarry and move to Joliet and asking the court to fix more positive visitations rights and child support obligations. Prior to a hearing on that motion, Defendant filed a petition to modify the decree alleging that Plaintiff was an unfit mother and that it was in the best interests of the minor child that custody be placed in him. On July 31, 1970, the court entered an order denying Plaintiff's petition and granting Defendant's motion. The court found that there had been a substantial change in circumstances, that Plaintiff had begun

using marijuana, that Plaintiff had offered to obtain marijuana for the 17-year-old brother of Defendant, and that she had neglected the child.

Plaintiff filed a post-trial motion to vacate the order and for leave to present additional testimony. The court allowed Plaintiff to present said testimony and, after hearing the additional evidence, entered an order denying Plaintiff's motion to vacate judgment. It is from this order that Plaintiff has appealed. On review Plaintiff contends that the judgment of the trial court was contrary to law and against the manifest weight of the evidence.

■■ It is well established that a decree of divorce awarding custody of a minor child of the marriage will not be modified unless new conditions are shown to have arisen, and then only if such new conditions dictate a change based upon a consideration of the welfare of the child. (*Jayroe v. Jayroe*, 58 Ill.App.2d 79, 82.) It has further been established that although there is no arbitrary rule requiring that custody of a child be placed with the mother (*Vysoky v. Vysoky*, 85 Ill.App.2d 306, 311), it is usual in divorce cases to entrust the care and custody of a child of tender years to its mother (*Szczawinski v. Szczawinski*, 37 Ill.App.2d 350, 353), provided she is a fit and proper person. (*Hahn v. Hahn*, 69 Ill.App.2d 302, 304.) We are also aware of the fact that the trial court has broad discretion in awarding custody of children (*Dunning v. Dunning*, 14 Ill.App.2d 242, 247), but such discretion is a judicial one and is not unlimited. (*Marcus v. Marcus*, 109 Ill.App.2d 423, 431.) We are, therefore, required to review the entire record of both the original proceedings, wherein custody was changed, and the subsequent evidence adduced pursuant to Plaintiff's post-trial motion in order to ascertain whether the ruling of the trial court was against the manifest weight of the evidence.

■■ The evidence showed that immediately after the divorce Plaintiff and the child lived with Defendant's parents. She remained there for approximately 1½ months and then moved into an apartment and the only testimony as to neglect involved this short period when Plaintiff lived with the grandparents. Defendant's mother testified that during this time Plaintiff frequently stayed out late at night, had at times left the child in her custody over a weekend, on one occasion left the child with her when he was sick, and left the child with her when she took a four or five day vacation to Colorado. She admitted that Plaintiff was a good mother to the child when she was with him and that she kept him clean and treated him well. All of the other witnesses at the first hearing verified these facts. The Defendant testified that he felt that the child was not given proper food, and that although he was cared for, he felt the boy was maladjusted. The only evidence of possible neglect is that

Plaintiff left the child with the grandparents and we cannot consider this in any way sufficient to demonstrate neglect of the child and unfitness on the part of the Plaintiff. This is particularly true since the evidence showed that the child was customarily left with the grandmother prior to the divorce and the grandmother obviously not only welcomed the opportunity to stay with the child, but, in fact, encouraged it. Furthermore, during the period following the first hearing, when the Defendant had custody, the child was customarily left with the grandmother at least one night a week and on occasion over a weekend. Under these circumstances, we feel that the court's finding that the child was neglected by the mother was against the manifest weight of the evidence.

It is apparent, however, from an examination of the record and the findings of the trial court, that the major thrust of Defendant's case and the primary reason for the court order changing custody is the allegation that Plaintiff had become involved with drugs, specifically marijuana, and that by virtue of this involvement became unfit to have custody of the child. In support of this allegation Defendant offered a tape recording which Defendant's 17 year old brother allegedly took of a conversation between himself and Plaintiff. That tape was introduced as an admission that Plaintiff was involved with the use of marijuana and that she had offered to obtain marijuana for the 17 year old boy. No objection was made to the tape recording and it is obvious from the express finding of the trial court concerning Plaintiff's alleged offer to obtain marijuana for Defendant's brother, that this evidence was considered by the court when it rendered its decision.

■■■ In Illinois the legislature has enacted an eavesdropping statute which provides that a person commits eavesdropping when he uses an eaves-dropping device to record all or any part of a conversation, unless he does so with the consent of any one party to the conversation and at the request of a State's Attorney. (Ill. Rev. Stat. 1969, ch. 38, par. 14—2.) In this case it is apparent that there was no prior consent by Plaintiff and that the tape recording that was offered and introduced into evidence obviously fell within the prohibition of the Statute. (*People v. Kurth*, 34 Ill.2d 387.) That Statute goes on to provide that any evidence obtained in violation of the Eavesdropping Act shall be inadmissible in any civil trial. (Ill. Rev. Stat. 1969, ch. 38, par. 14—5.) Counsel for Defendant argues that Plaintiff waived her right to complain of the admission of the recorded conversation by virtue of the fact that counsel employed by Plaintiff to represent her at the first hearing failed to object to its admission. We have previously held, however, that even though the failure of counsel to object to the admission of incompetent evidence ordinarily waives any error in its admission, that in a child

custody case, where the court is concerned with the rights of a minor, such a technicality cannot be relied upon. (*Dayan v. Dayan,* 86 Ill.App.2d 358, 360.) Thus, even though Plaintiff's counsel failed to object to the admission of the tape recording, we find that it is not a proper part of the record and should, therefore, not have been considered by the trial court when it rendered its decision. The consideration of this evidence by the court, as is apparent from its findings and its failure to strike any reference to it upon motion of counsel employed to represent Plaintiff on rehearing, is, in our view, sufficient cause, in and of itself, to remand this case. In the interest of the child's welfare, however, we feel compelled to examine the record in the case to ascertain whether, without reference to the tape recording, the evidence warrants a custody change.

■■■ Aside from the recording, there was testimony concerning Plaintiff's use of drugs during the period immediately following the divorce and a letter written by Plaintiff states that a friend had taught her how to get higher other than by getting drunk. The letter went unexplained. There was also, however, testimony accusing Defendant of the use of marijuana. Both Plaintiff and Defendant denied ever using drugs. We feel inclined toward the view expressed by Plaintiff's psychiatrist that even if she had used marijuana, in the absence of any showing that this interfered with her ability to properly care for the child, such use demonstrated a mistake in judgment and does not in and of itself indicate unfitness. There is no evidence of anyone ever seeing Plaintiff using marijuana or any other drug and we cannot punish Plaintiff by taking away her child by virtue of the fact that she may have possibly committed an indiscretion, albeit a tragic one. What is of paramount importance is the welfare of the child, not punishment of the mother or father. *Jingling v. Trtanj,* 99 Ill.App.2d 64, 65.

Furthermore, it is apparent that despite any past indiscretions, Plaintiff now lives a stable and well oriented life. She has remarried and both she and her new husband are respected teachers in the Joliet school system. They have a large mobile home in a residential area in which the child will have his own room. Furthermore, the sister of Plaintiff's husband, who has four children of her own, has promised to care for the child while Plaintiff is at work, although Plaintiff did indicate at trial that if custody were to remain in her she would resign her position as a teacher and devote full-time to raising the child. Both Plaintiff and her husband are of the same religious faith as the child and both obviously love and care for the boy. Defendant, too, obviously cares for the child and it is clear that his new wife also has a deep affection for him. Defendant's current life pattern does not, however, appear to be as well

structured as is Plaintiff's. He has held 7 or 8 jobs during the last two years, some of which he left under unfavorable circumstances, and although he professes a desire to continue his education, perhaps in the field of law, transcripts of his scholastic records placed in evidence are not indicative of any real academic motivation. It is also of some significance that neither Defendant nor his current wife are of the same religion as is the child.

■■ It is obviously of great concern to Defendant and his family, particularly the paternal grandmother who has, in the past, assumed a great deal of responsibility in caring for the child and obviously has a deep and sincere love for the child, that if Plaintiff retains custody, the child will be removed from the geographic area, thereby curtailing visitation. Plaintiff's move to Joliet was, however, for the purpose of joining her husband where both might work and create a new life for themselves, and not for the purpose of depriving Defendant of any rights of visitation. We cannot justify a change of custody merely because it becomes less convenient for visitation rights to be exercised.

■■ From our review of the record we find that the judgment of the trial court is against the manifest weight of the evidence and that the evidence presented was insufficient to justify a finding that there was a material change in circumstances or that Plaintiff is unfit to care for the child, and feel that the best interests of the child would best be served by continuing custody in the mother as awarded in the original decree. In view of the fact that there have been visitation problems in the past and that there undoubtedly exists a great deal of animosity between Plaintiff and Defendant, we feel that it is in the best interest of the child that visitation rights be specifically set. The judgment of the Circuit Court of Madison County, modifying the decree and placing custody in the father, is therefore, reversed with directions that the trial court enter an order specifying precise visitation rights in Defendant.

Judgment reversed with directions.

EBERSPACHER, P. J., and JONES, J., concur.