NATALIE GARLAND, Plaintiff-Appellee, *v.* NORMAN GARLAND, Defendant-Appellant.

(No. 59688; ■■■■■■■■)

First District (5th Division)—May 3, 1974.

Samuel D. Freifeld and Dennis D. Dicks, both of Chicago, for appellant.

Wilfred F. Rice, Jr., and Gerald D. Skoning, both of Chicago (Seyfarth, Shaw, Fairweather & Geraldson, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal arises from an order allowing plaintiff to retain custody of her two children and to remove them to Oxford, Mississippi. Defendant initially filed a petition seeking an order restraining the removal and requesting custody. Plaintiff then filed a counter-petition seeking a

modification of the judgment for divorce to allow her to remove the children.

On appeal, defendant contends that (1) the judgment was based on sexual discrimination in violation of the United States and Illinois constitutions; and (2) the judgment was contrary to the manifest weight of the evidence.

Plaintiff was divorced from defendant and was granted the sole care, custody, control and education of the couple's two minor children, subject to defendant's reasonable visitation rights. Defendant's petition asserted that the welfare of the children would best be served by transferring their custody to him. In support thereof, defendant called plaintiff and her fiance, Ronald Schroeder, as adverse witnesses. Both were then teaching in the evening division of Northwestern University and were working toward their doctorate degrees at that school. At that time, Schroeder was 26 years old, approximately 6 years younger than plaintiff, and had never been married. He testified that he had known the children since 1971 and that they responded well to him. He had accepted a teaching position for the fall of 1973 at the University of Mississippi in Oxford, Mississippi, where plaintiff had also been assured that she would be able to find employment. A marriage between Schroeder and plaintiff was to take place after they moved there.

Although defendant informed plaintiff that he would contest the removal of the children, she sold her Evanston residence and used the proceeds as down payment for a house in Oxford. The title and the mortgage to that house were in Schroeder's name, even though plaintiff had made the $1,000 earnest money payment. She was also to provide the balance of the $15,000 deposit money but, in return, was to receive from him a promissory note secured by a mortgage.

The next witness called by defendant was his present wife, Marilyn Garland. At the time of her marriage to defendant in November, 1972, she was 21 years old. She had had limited experience dealing with children.

Dr. John Loesch, a psychiatrist called by defendant, testified that the children had a strong attachment to defendant and that he acted as a paternal and maternal figure to them. It was Dr. Loesch's belief that the children preferred being with their father over their mother, and that separation from defendant would be more traumatic to them than to most children.

Around the time of the divorce, Dr. Loesch saw defendant professionally for approximately 10 months. He observed the children for 3 to 4 hours on one afternoon, individually and with their father. He had not known them prior to this meeting.

On cross-examination, Dr. Loesch testified that neither child wanted

to be put in a position of having to decide which parent he preferred for custody, which he stated was indicative of consideration for both parents.

Defendant testified that he was a law professor at Northwestern University. He indicated that he was a concerned and loving father who wanted custody of his two children. He believed this would be in their best interest, because they needed his love and guidance, particularly because plaintiff was away from them quite often due to her teaching and school activities and this would probably continue in Mississippi.

OPINION

## I.

Defendant first contends that the judgment was based on sexual discrimination, because in denying defendant's petition, the judge stated:

> "I can't for the life of me find that it would do any great good to either of these youngsters to take them from their mother with whom they have been for so long a period  *  *  *.
>
> *  *  *
>
> I am not going to put these children in a bind of saying goodby to their mother and living with a father who loves them dearly. I think it would destroy the children emotionally; and yet I know the children must necessarily suffer if they don't have a meaningful contact with their father and it's important to them, because it's been built-up.
>
> *  *  *
>
> It's somewhat unusual because with all the problems one has in earning a living, all of the burdens of just day to day living, it's unusual for a father to have shown the degree of interest Professor Garland has for the children and the continuing contact that he has had with them, with practically no interruptions *  *  *."

■■■ Defendant maintains that those statements indicate the court's decision was based on the assumption that the mother is more capable of maintaining custody than the father, and, as a result, he argues that he was deprived of equal protection of the law. Initially, we note that, in matters involving the custody of children, every presumption is indulged in the continuing validity of the original decree and, if its provisions are to be changed, the burden of proof is on the moving party to show why a change should be made. (*Norris v. Norris,* 121 Ill.App.2d 226, 257 N.E.2d 545.) New and changed conditions must arise to warrant the court in changing its prior custody (*Nye v. Nye,* 411 Ill. 408, 105 N.E.2d 300), and they must be such that they affect the welfare of the children. *Finn v. Finn,* 11 Ill.App.3d 385, 297 N.E.2d 1.

■■ As we view the above set forth statements of the trial judge in the light of the entire record, we reach the conclusion that, in his consideration of all the testimony, the trial judge was of the belief that the removal of the children to Mississippi by the mother was not such a change which would so affect the welfare of the children as to warrant a modification of the original decree of custody. *See Arden v. Arden,* 25 Ill.App.2d 181, 166 N.E.2d 111.

■■ Furthermore, we note that there is no contention that the original custody determination was made upon the assumption that a mother is more capable of maintaining custody of the children than is the father. The record discloses that at that time, defendant agreed to give plaintiff permanent custody and control of the children subject only to his reasonable rights of visitation. His claim of sexual bias now is considerably diluted by his agreement to the terms of the original decree. And, while it is true that defendant was confronted here with a presumption of the continuing validity of the custody provisions of the original decree, the presumption operates to protect the welfare of the children by preserving the status quo regardless of which parent has custody. To that extent, it is neither constitutionally prohibited nor sexually discriminatory.

## II.

Defendant next contends that the judgment of the trial court was contrary to the manifest weight of the evidence. He argues that the ruling was supported by neither the evidence nor the existing laws in Illinois.

The evidence presented indicated that there was no question of the fitness of either parent. Defendant, a law school professor, had recently remarried and appeared to be capable of supporting his children. He had exercised his visitation privileges extensively and apparently played a major role in the lives of his children.

■■ It was also indicated that plaintiff was a loving and devoted mother. Defendant, however, contends that the testimony of plaintiff, in explaining her relocation and the details of the purchase of a house in Oxford, indicated her lack of good judgment and instability. He argues that these failings, when considered with the testimony of Dr. Loesch, overwhelmingly supported the conclusion that the welfare of the children would best be served by a custody transfer to him. We disagree. We note that Schroeder, plaintiff's fiance, although 6 years her minor, had recently received his doctorate and had secured fulltime employment at the University of Mississippi. The University had also assured plaintiff a teaching position, and although the new house was to be titled in Schroeder's name, plaintiff was to receive a promissory note and a mortgage for the down payment she was providing. Schroeder had become acquainted with the children and wanted to be their stepfather,

and in answer to the court's question, he stated his willingness to marry plaintiff immediately if she were allowed to remove the children. Plaintiff's intended marital relationship gave every impression of stability and in itself did not constitute sufficient cause to change the custody of the children. The existence of plaintiff's relationship with Schroeder failed in our opinion to establish either that plaintiff was less fit to have custody of the children or that their welfare required the change of custody. *Hirth v. Hirth*, 59 Ill.App.2d 240, 207 N.E.2d 114.

Furthermore, although Dr. Loesch testified that the separation of the children from the father would be more traumatic than to most children because of their apparent closeness, we believe that the evidence indicates both were good parents and, under such circumstances, a separation from either would be traumatic.

■■ From our review of the record, we conclude that the finding of the trial court was not against the manifest weight of the evidence and the court properly exercised its judicial discretion in allowing the removal of the children and in denying the change of custody request.

### III.

Defendant also contends that removal of the children from Illinois to Mississippi would be disruptive to their lives and would cause them grave psychological trauma.

■■ Illinois law permits removal to another state of children whose custody has been awarded to one parent by a divorce decree, as long as it is in the best interests of the children. *Spencer v. Spencer*, 132 Ill. App.2d 740, 270 N.E.2d 72.

Defendant relies heavily on the testimony of Dr. Loesch in arguing that the best interests of the children would not be served by their removal. Although Dr. Loesch's testimony is significant, we note that he was with the children and defendant for only 3 or 4 hours. Defendant had been his patient for about 10 months, and the doctor was well aware of defendant's close relationship to the children but, although he felt the children preferred their father, he testified that neither child wanted to be put into a position of having to choose one parent over the other. There was no testimony from Dr. Loesch or any other witness negating either the testimony of plaintiff that she also was close to her children or that of Schroeder that the children responded well to him. In any event, the preferences of the children are only appropriate when based on reasons related to their best welfare. *Stickler v. Stickler*, 57 Ill.App.2d 286, 206 N.E.2d 720. *Finn v. Finn, supra.*

Although defendant will not be able to see his children as often if they are removed to Mississippi and, as he contends, they may suffer some

psychological trauma therefrom, we believe that trauma would also result if a transfer of custody from plaintiff is granted and, from our review of the record, we are of the opinion that the evidence as to change of conditions affecting the best interests of the children was insufficient to warrant a transfer of custody.

For the reasons stated, the judgment is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.