ANGELA T. BRADY, Plaintiff-Appellant, *v.* JOHN C. BRADY, Defendant-Appellee.

(No. 74-202; 

Fifth District—January 29, 1975.

*Rehearing denied March 20, 1975.*

E. H. Price, of Robinson, and William J. Bowe and Charles M. Biggam, both of Roan and Grossman, of Chicago, for appellant.

Frank J. Weber, of Cox, Phillips, Weber & Weber, of Robinson, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

On April 7, 1972, the plaintiff, Angela Brady, was granted a divorce from the defendant, John Brady, in the Circuit Court of Crawford County on grounds of mental cruelty and was awarded custody of their daughter, Shannon Kathleen Brady, who was then 19 months old.

On September 8, 1972, during a period of visitation, the defendant filed a petition to modify the divorce decree in which he sought custody of his daughter. It was alleged in the petition that, subsequent to the entry of the divorce decree, the plaintiff had become so emotionally unstable that a change of custody was in the best interest of the minor daughter. The Honorable A. Hanby Jones granted the defendant tem-

porary custody of his daughter without notice having been given to the plaintiff.

On September 11, 1972 the plaintiff filed a petition asking that the defendant be ordered to show cause why he should not be held in contempt of court for failure to pay child support and attorney's fees as required by the divorce decree.

A hearing was held before the Honorable Phillip B. Benefiel on September 21, 22 and 28, 1972. The court stated that the hearing was being conducted on both petitions, the plaintiff's petition to show cause and the defendant's petition to modify the divorce decree. At the conclusion of the hearing on September 28, Judge Benefiel ruled only on the petition filed by the plaintiff, holding the defendant in contempt of court and ordering him to pay child support and attorney fees to the plaintiff. The court's order provided that the other matters in controversy remained for further determination by the court. Inexplicably, over a year passed before any further proceedings on the petition occurred. The record indicates that during that period, plaintiff consulted Judge Benefiel concerning the case and Judge Benefiel felt obliged to disqualify himself.

The hearing on defendant's motion to modify the divorce decree was finally held on March 1 and 2, 1974, before the Honorable Harry Ziegler. After hearing the evidence, the court awarded permanent custody of the child to the defendant subject to the right of the plaintiff to have custody of the child for 2 months during each year. The plaintiff has appealed that order claiming that the trial court abused its discretion in depriving a mother of custody of her young daughter.

The plaintiff-appellant argued in the trial court and argues here that it was improper to include in the record on appeal the earlier testimony before Judge Benefiel since it had never been before Judge Ziegler and, therefore, could have formed no basis for his decision. It was not transcribed until the conclusion of the proceedings before Judge Ziegler.

■■ At the outset, there is substantial controversy concerning the nature of the proceedings before Judge Ziegler. It appears from the record that Judge A. Hanby Jones entered an ex parte order granting defendant-appellee temporary custody of the child pending a full hearing on the question of modification. At the conclusion of the hearing in September, 1972, Judge Benefiel stated that he would continue the temporary modification pending receipt of further evidence. In the order of October 31, 1972, finding defendant in contempt of court for failing to pay child support and attorney's fees, Judge Benefiel specifically reserved ruling on the merits of the modification. Judge Benefiel subsequently disqualified himself and Judge Ziegler became responsible for the case.

134

We consider the hearing before Judge Ziegler in March, 1974, a trial de novo. As such, it was Judge Ziegler's duty to hear the evidence presented and judge the credibility of the witnesses. Because of this duty, it would have been improper for Judge Ziegler to have considered the testimony taken before Judge Benefiel in deciding the issue. (*Trzebiatowski v. Jerome*, 24 Ill.2d 24, 179 N.E.2d 622 (1962); *Mikrut v. Mikrut,* 113 Ill. App.2d 446, 251 N.E.2d 84 (1969).) Clearly, since the former proceedings had not been transcribed, Judge Ziegler could not have considered that evidence in toto. We are concerned, however, with statements made by Judge Ziegler in the hearing on the motion by the defendant for extension of time of file the report of proceedings of the September, 1972, hearing. The following occurred during argument on whether the record of the September, 1972, hearing should be made a part of the record on appeal:

> The Court: "* * * If the Appellate Court wants it, they should decide it. My decision was, in a way, probably based on it. At that time I said I would not change the order. Isn't that right, Mr. Price?
>
> Attorney Price [for plaintiff]: There was a substantial amount of controversy. Mr. Weber [attorney for defendant] was insisting that custody had been changed all during the trial, if you'll remember, Judge. My position was consistently that custody had never been changed. The continuation or whatever it was, the order had never been changed.
>
> The Court: I made the temporary custody permanent by that order. So in some respects it hinged on that. I did rely on some prior order, but I don't know what testimony was that brought that about. I think I just said I would not change the custody * * *."

The only orders contained in a record which properly could have been before Judge Ziegler were the order of September 8, 1972, entered by Judge A. Hanby Jones granting temporary custody without notice and the order by Judge Benefiel on October 31, 1972, specifically reserving judgment on the question of custody. A docket entry by Judge Benefiel, dated September 28, 1972, continuing the temporary modification, appears of record but contains no digest of testimony taken or reasons for continuing the temporary order of modification. Though we are puzzled by Judge Ziegler's statements, we are firm in our conviction that any consideration given by Judge Ziegler to the September hearings before Judge Benefiel was improper, whether received from the record or otherwise.

■■ The question remains whether the report of proceedings of the Sep-

tember hearings before Judge Benefiel, included in the record on appeal, can or should be considered by this court notwithstanding its inadmissability at trial. The question is an interesting and novel one, particularly in light of the facts as they developed in this case. The testimony of a key witness differs dramatically in the two proceedings. Although we recognize the sensitivity and importance of proceedings involving the custody of minor children, we believe that the only record which we can consider is of the proceedings before Judge Ziegler which reflect the testimony upon which he made his decision to modify the divorce decree. To do otherwise would be to negate the intent and effect of a de novo hearing and weaken the long standing doctrine that modification be based solely on the circumstances and the changes therein which exist at the time of the modification. We refuse to do that, particularly in a case where the hearings were separated by over a year and a half.

With this in mind, we will proceed to review the evidence properly before Judge Ziegler.

The first witness to testify at the hearing on March 1, 1974, was Ethel Krawetz, the mother of the plaintiff. She testified that after her daughter's divorce from the defendant the plaintiff went back to school and earned a B.A. degree from the University of Minnesota. Mother and daughter argued about the latter's future. Mrs. Krawetz sent $80 a month to the defendant to pay for Shannon Brady's nursery school in Robinson, Illinois. Mrs. Krawtez testified that she had had an opportunity to observe her daughter subsequent to the divorce and had not observed anything irrational or out of the ordinary about the plaintiff's conduct. She stated that the plaintiff has remarried, that the plaintiff's present husband has shown love, kindness and concern for Shannon Brady and that Shannon Brady adores the plaintiff's present husband.

The next witness to testify was the defendant, called under section 60 of the Civil Practice Act. The defendant lives in Robinson, Illinois, and has remarried. His present wife works as a secretary for Lincoln Trail College. The defendant stated that, at the time of the divorce decree, he felt that it was in the best interests of his daughter that custody be awarded to the plaintiff. He responded negatively when asked whether he had any personal knowledge of any conduct of the plaintiff which caused him to conclude otherwise. The defendant immediately altered his testimony, however, and related an incident in which the plaintiff left the child in a closed automobile on a hot day when she met Mr. Brady at the airport in Minneapolis in August, 1972. The defendant stated that the child was sweating while she was in the car, but did not state that she was locked in the car for a long period of time or that the child was endangered by being left in the car. The defendant could

recall no other incidents which would suggest that the plaintiff should not have custody of the child.

On examination by his counsel, the defendant testified that the plaintiff's mother and aunt had called him, the defendant, and told him that his daughter was not being properly cared for while the child was in the custody of the plaintiff and suggested to him that he obtain custody of Shannon, suggesting reasons therefor.

Abraham Krawetz, the plaintiff's father, testified that the plaintiff lived in his home in West St. Paul, Minnesota, after the divorce and that he had seen no evidence of emotional instability in the plaintiff and had never witnessed acts of instability. Mr. Krawetz never saw the plaintiff mistreat her child and stated that his impression was that the plaintiff loved her daughter. He also stated that Shannon Brady loves the plaintiff and that both the plaintiff and her present husband get along very well with the child.

Celestine Pollock, the mother of the plaintiff's present husband, testified that the plaintiff and her daughter had visited the witness' home at Christmas time. She stated that the plaintiff had an excellent relationship with her daughter and that William Pollock, the witness' son and the plaintiff's present husband, is very fond of Shannon Brady. The witness never observed any conduct on the part of the plaintiff that would cause her to believe that the plaintiff was unstable or disturbed.

William Pollock testified that he married the plaintiff on November 26, 1973. Mr. Pollock has a B.A. degree in mathematics and was employed by the Department of Labor in Washington D.C. at a yearly salary of $17,500. The Pollocks lived in a two-bedroom townhouse in Alexandria, Virginia. Mr. Pollock has subsequently taken a job in Minnesota and lives there with Angela Brady Pollock. Mr. Pollock testified that he loves Shannon Brady, that he thinks that the child loves him, that he gets along well with the child and that he would very much like to be the child's stepfather. He stated that his wife, the plaintiff, does not work and that she has no present plans to do so. Mr. Pollock is willing to contribute financially to Shannon Brady's support.

The plaintiff, Angela Brady Pollock, testified that, at the time she was granted the divorce and custody of her daughter in April of 1972, her fitness as a mother was not questioned. In response to an allegation made in the defendant's petition to modify the divorce decree, the plaintiff stated that, while she did argue often with her mother and did on one occasion grab her by the shoulders, she never threw her to the floor, attempted to strangle her nor struck her. In response to a second allegation made in the defendant's petition, the plaintiff stated that she once fell from a balcony in her parents' home but did not jump. She

also denied that she had ever taken her child from home late at night while in a fit of rage. In response to another allegation in the defendant's petition, the plaintiff testified that, at the time she was living in an apartment and going to school in Minnesota, she had made proper plans for the care of her child. The plaintiff admitted that she had seen a psychiatrist on one occasion, prior to the divorce decree, and that she had discussed such things as the "trauma of divorce" with the psychiatrist. The plaintiff also admitted that she had slapped her daughter on two occasions in the past, further stating that she shouldn't have slapped the child and has "learned a lot" since that time. The plaintiff stated that she is very fond of children, that Shannon is very important to her and that she wants very much to be an adequate mother to Shannon.

The first witness to testify for the defense was Joan Walls, an acquaintance of both parties. She testified that she has babysat for Shannon Brady on many occasions, and that, in her opinion, the defendant has done a wonderful job in raising Shannon.

Suzanne Brady, the defendant's present wife, testified that she, the defendant and Shannon live in a two-bedroom house and that Shannon has her own bedroom. Suzanne Brady works as a secretary at Lincoln Trail Junior College and Shannon is at nursery school when both Mr. and Mrs. Brady are at work. She stated that she gets along well with Shannon and that she enjoys taking care of Shannon.

The defendant testified that he is a history teacher in a junior high school and a coach in the high school and that he earns about $10,500 per year. He stated that the plaintiff had once told him in a phone conversation, "I'm going to school and I don't want Shannon." This statement was allegedly made in July of 1973 at a time when Shannon was visiting the plaintiff in Minnesota.

The plaintiff testified in rebuttal that she never told the defendant that she did not want the child back. The plaintiff stated that, if granted custody of her daughter, she would not put the child in a nursery school.

The record indicates that, after both parties rested, the trial judge spoke to Shannon Brady, but the conversation was not recorded. The court found that Shannon Brady is a perfectly happy child and that the plaintiff is not stable and ordered that permanent custody of the child be awarded the defendant subject to certain visitation privileges of the plaintiff.

■■ It is well settled in Illinois that the paramount consideration in awarding custody of minor children is the welfare and best interests of the children. (*Miezio v. Miezio*, 6 Ill.2d 469, 129 N.E.2d 20 (1955); *Look v. Look*, 21 Ill.App.3d 454, 315 N.E.2d 623 (1974); *Fears v. Fears*,

138

5 Ill.App.3d 610, 283 N.E.2d 709 (1972).) The custody of a child of divorced parents is always subject to modification by the court as the best interests of the child demand. (*Girolamo v. Girolamo*, 5 Ill.App.3d 627, 283 N.E.2d 713 (1972).) The trial court's judgment will not be reversed unless it appears that manifest injustice has been done or unless it is contrary to the manifest weight of the evidence. (*Stark v. Stark*, 13 Ill.App.3d 35, 299 N.E.2d 605 (1973); *McDonald v. McDonald*, 13 Ill. App.3d 87, 299 N.E.2d 787 (1973); *Holloway v. Holloway*, 10 Ill.App.3d 662, 294 N.E.2d 759 (1973).) A custody decree is not to be modified, however, unless a substantial change of circumstances has occurred subsequent to the original custody order and the change of circumstances affects the welfare of the child. (*People ex rel. Bukovich v. Bukovich*, 39 Ill.2d 76, 233 N.E.2d 382 (1968); *Garland v. Garland*, 19 Ill.App.3d 951, 312 N.E.2d 811 (1974); *Fears v. Fears*, 5 Ill.App.3d 610, 283 N.E. 2d 709 (1972).) In matters involving the custody of children, every presumption is indulged in the continuing validity of the original decree and, if its provisions are to be changed, the burden of proof is on the moving party. (*Garland v. Garland*, 19 Ill.App.3d 951, 312 N.E.2d 811 (1974).) The plaintiff-appellant has cited *Bulandr v. Bulandr*, 23 Ill. App.2d 299, 162 N.E.2d 585 (1959), for the proposition that a court should not change the custody of a minor unless the fitness of the custodial parent is challenged. This court has recently held, however, that, in order to change custody of a child from the mother to the father, it is not necessary to find that the mother is unfit; the court must merely find that conditions have changed to such an extent that a change of custody is in the best interests of the child. *Talbert v. Wallace*, 17 Ill. App.3d 956, 308 N.E.2d 823 (1974); *Kline v. Kline*, 57 Ill.App.2d 244, 205 N.E.2d 775 (1965).

■■ In determining whether the trial court's judgment was contrary to the manifest weight of the evidence, the court must consider the general rule that a child of tender years, especially a daughter, is generally entrusted to the care and custody of the mother. (*Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300 (1952); *Fears v. Fears*, 5 Ill.App.3d 610, 283 N.E.2d 709 (1972).) The rule favoring the mother, however, is not to be applied arbitrarily. *Girolamo v. Girolamo*, 5 Ill.App.3d 627, 283 N.E.2d 713 (1972); *Vysoky v. Vysoky*, 85 Ill.App.2d 306, 230 N.E.2d 3 (1967).

■■ In addition, the divorce decree is res judicata as to known facts in existence at the time the decree was entered. (*Vysoky v. Vysoky, supra; Nye v. Nye, supra.*) If plaintiff is, in fact, highly emotional, this condition clearly existed before the time of the divorce, and if there has been any change in her emotional make-up, the record is clear that with remarriage she has become more mature.

The evidence in the case at bar does not suggest that the plaintiff was unfit as a mother. Nor does the evidence reveal changes in the life of the plaintiff which would justify a modification of the custody decree. In fact, the changes occurring in the life of the plaintiff subsequent to her divorce are favorable to her retention of custody. The plaintiff received a college degree from a major university. She married a man who has a very good job with a good income. Mr. Pollock claims to love Shannon Brady and states that he wishes to care for her. The plaintiff is not working and would therefore be able to devote her time to the raising of her daughter. In addition, the defendant completely failed to prove any of the five allegations made against the plaintiff in the petition to modify the divorce decree and was found in contempt of court for failure to comply with the divorce decree. Judge Ziegler based his decision to take the custody of Shannon from the mother on his finding that the mother was emotionally unstable. It is apparent that both parents deeply love Shannon and are able to give her not only love and affection but the material comforts of life. We have searched the record of proceedings before Judge Ziegler for some evidence to support his conclusion that the plaintiff mother is emotionally unstable; we are unable to find such support. Except for several trifling incidents, too insignificant to reiterate here, we can find nothing to support his finding.

■■ At the time of the divorce, the defendant acknowledged that he felt that it was in the best interest of Shannon to be with her mother. Both parties have remarried. Both are obviously fit and proper persons to have custody of Shannon. We can find in the record, considering all the evidence properly before this court, no evidence of any change of circumstances sufficient to justify the order of March 6, 1974 modifying the divorce decree and awarding custody to the defendant father.

Prior to entering the order of March 6, 1974, awarding custody to the father, the court observed that the child was happy and that he would leave the order of temporary custody the way it was. It would appear that he gave some consideration to the fact that because the child had been with the father since September, 1972, some weight should be given to this circumstance alone. This has been urged on us on appeal, coupled with the suggestion that the plaintiff did not actively pursue this matter in court until her remarriage.

We are not convinced that it was plaintiff's burden to cause defendant's petition to modify custody to be heard; nonetheless, the record is clear that plaintiff did all she could to obtain a final disposition of this petition. Complaints, later withdrawn, were made to the Illinois Bar Association because of inaction in the case. Without suggesting fault, we strongly believe that in a case involving child custody or a change

in child custody that counsel representing both parties and the court have a duty to the child or children that a decision be made without unnecessary delay. Inexplicably, no proceedings were had nor was any decision reached between September, 1972, and March, 1974.

In any event, the passage of time alone cannot justify the improper decision here.

The order of the Circuit Court modifying the divorce decree is reversed and the cause is remanded to the Circuit Court of Crawford County with directions that permanent custody of Shannon Brady be returned to Angela Brady Pollock and that further proceedings consistent with this opinion be conducted to determine child support, reasonable visitation, and, pursuant to section 15 of "An Act * * * in relation to divorce" (Ill. Rev. Stat., ch. 40, par. 16), proper allocation of costs, including attorney's fees, of the proceedings on the petition to modify custody and the appeal.

Reversed and remanded with directions.

JONES, P. J., and G. MORAN, J., concur.