GLENDA M. ABBOTT, n/k/a Glenda M. Huff, Plaintiff-Appellee, *v.* RICHARD
O. ABBOTT, Defendant-Appellant.

Fifth District   No. 76-53

Opinion filed July 15, 1976.

Robert L. Douglas, of Robinson, for appellant.

E. H. Price, of Robinson, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This appeal is from an order of the circuit court of Crawford County
denying a petition to modify a divorce decree, and leaving custody of
two minor children of the parties with Glenda M. Huff, the mother,
plaintiff-appellee.

Defendant-appellant Richard O. Abbott presents two issues for review:
First, whether the trial court's refusal to modify the decree and thereby
transfer custody of the children to their father fails to serve the welfare
and best interests of the children, and second, whether the trial court's
decision results in manifest injustice, and is contrary to the manifest
weight of the evidence.

The parties were divorced on April 3, 1970, and custody of the minor

children, Suzanne, then age 9, and Sandra, then age 8, was awarded to the mother. Both parties have remarried. On July 29, 1975, the mother filed a petition to show cause alleging the defendant was in arrears in child support payments, and had failed to pay her that which was due as a cash settlement from the divorce decree. On October 9, 1975, defendant filed a petition for change of custody alleging that the mother had influenced the children to be turned against him to such an extent that they refused to visit him. The defendant did not allege a change of circumstances in the lives of the parties, unfitness of the custodial parent, or that it was in the best interests of the children that they live with their father.

A hearing was held on both petitions on December 1, 1975. On January 7, 1976, an order was entered "remanding" both children to the custody of their natural mother. The order further stated "in the event that the children wish to live with their father, they are to write a letter to the court" at the end of the 1976 school term.

At the hearing, the defendant admitted that he had not paid the support and settlement amount due to the plaintiff. He stated in court that it was his intention, by not paying support, to force his wife to come to court and to then file a cross-petition for custody of the children.

In regard to the children, there was testimony that the financial and physical needs of the children were being met adequately in the mother's home in Ohio. The major issue centered around the behavior of the youngest daughter, and what that indicated as to parental discipline. There was testimony that unbeknownst to the mother, this daughter had engaged in sexual activity at the age of 13. The girl is a "C" student, had been absent from school a number of times, and insisted upon smoking cigarettes over her mother's objections. There was also testimony that this daughter had been permitted to go on car dates with a neighborhood boy.

Testimony was given that the father learned of the sexual episodes by reading letters from his daughter in Ohio back to one of the daughter's friends. According to the testimony given, he knew of the situation a month to 6 weeks before the hearing on the petitions, but did not disclose his information to the mother in any manner. He gave the letter to his attorney, and the attorney used it to examine the daughter's testimony while on the witness stand. That was the first information that the girl's mother or her older sister had of the relationship. Failure of the father, upon learning of the daughter's misconduct, to promptly advise the mother custodian for purposes of correction, we consider as evidencing a disregard for the best interests of the child on behalf of the father.

It appears that the mother was licensed to sell real estate and has worked part-time until she recently quit to begin supervision of the building of a new family home in the Ohio community where she settled after the divorce. There was evidence that the reasons for the daughter's

absences from school were either excused or due to illness, and that the girl was an average student.

It has often been said that in child custody matters, "the guiding star is, and must be, at all times the best interest of the child" (*Nye v. Nye*, 411 Ill. 408, 415; 105 N.E.2d 300). As we stated in *Patton v. Armstrong*, 16 Ill. App. 3d 881, 882-83, 307 N.E.2d 178:

> "The trial court's task in such cases is to reach a decision designed to protect the child's best interests. (*People ex rel. Morris v. Morris* (1969), 44 Ill. 2d 66, 254 N.E.2d 478.) Once a custody determination has been made by the trial court, a court of review should not disturb it absent a showing of manifest injustice. (*People v. Bukovich* (1968), 39 Ill. 2d 76, 233 N.E.2d 382.)"

■■■ The grounds for modification of a custody decree are not easily shown. In *Brady v. Brady*, 26 Ill. App. 3d 131, 138, 324 N.E.2d 645, we said:

> "A custody decree is not to be modified, however, unless a substantial change of circumstances has occurred subsequent to the original custody order and the change of circumstances affects the welfare of the child. (*People ex rel. Bukovich v. Bukovich*, 39 Ill. 2d 76, 233 N.E.2d 382 (1968); *Garland v. Garland*, 19 Ill. App. 3d 951, 312 N.E.2d 811 (1974); *Fears v. Fears*, 5 Ill. App. 3d 610, 283 N.E.2d 709 (1972).) In matters involving the custody of children, every presumption is indulged in the continuing validity of the original decree and, if its provisions are to be changed, the burden of proof is on the moving party. (*Garland v. Garland*, 19 Ill. App. 3d 951, 312 N.E.2d 811 (1974).)"

We agree with the trial court's decision to leave custody of the children with their mother. The father did not show a material change of circumstances in the lives of the children that was detrimental to their well being. It is true that the sexual activity of the daughter is disturbing, and might indicate lack of supervision and control. But the testimony was that the mother did not fail to supervise them. The father faults her for not making the child stop smoking.

■■ It is true that the oldest daughter expressed a preference for her father. A child's preference is a proper factor to be considered in matters relating to custody. (*Swanson v. Swanson*, 1 Ill. App. 3d 753, 274 N.E.2d 465.) However, such a change in preference alone will not support a change in custody. In *Stickler v. Stickler*, 57 Ill. App. 2d 286, 206 N.E.2d 720, a girl approaching the last year of her minority expressed a preference for the noncustodial parent. The court said at pages 289-290:

> "Clearly, the courts wish to discourage, except for compelling reasons, continuous or intermittent litigation between the parents over custody of their children. For these reasons and other reasons the requirements for change have been strict, indeed.

> We do not believe that it is necessary to discuss the unpleasantness of contested custody proceedings other than to mention the fact that it may hinder either parent's ability to command the child's respect or to instill in the child a willingness to subject himself to parental discipline—a quality of character which is just as desirable today as it was in biblical times, but which is extraordinarily difficult to achieve in homes which have been disrupted by divorce. We do not believe that it is only the current generation which has been required to face problems of child discipline, but surely our forebears could not have been beset with more formidable obstacles than those confronting the state, the school and the parent at the present time in the matter of teen-age discipline. And if the very existence of parental custody and control were to be left dependent upon the temporary preferential whim—or perhaps, pique—of the child, a successful rearing to maturity, difficult under ideal circumstances, would be rendered practically impossible."

See also *Finn v. Finn*, 11 Ill. App. 3d 385, 296 N.E.2d 1.

As part of the trial court's order, the children, if any, who wished to change custody were to write a letter to the court expressing that preference at the end of the 1976 school term. In view of the desire for stability in the parental-child relationship, and above quoted cases we find that the court should not proceed to alter or affect custody on the basis of such letters, if any should be received. Further delay and uncertainty should be avoided. That part of the order providing for the letters of preference should be stricken.

The last issue is whether the trial court's decision to leave the custody of the children in the mother was against the manifest weight of the evidence.

The trial court's decision of what is in the best interests of the children should not be reversed unless the reviewing court finds the decision is clearly against the manifest weight of the evidence, and it appears that manifest injustice will result, or has occurred. *Rosenberger v. Rosenberger*, 21 Ill. App. 3d 550, 316 N.E.2d 1; *Rathke v. Peebles*, 31 Ill. App. 3d 711, 334 N.E.2d 362.

Upon a careful review of the record, we find that the court's decision was not against the manifest weight of the evidence.

We affirm the trial court's denial of the appellant-defendant's petition to modify custody, and order that part of the order concerning letters from the children as to custody preference be and the same is, stricken.

Affirmed as modified.

KARNS, P. J., and G. J. MORAN, J., concur.