M. MARIE COMISKEY, Plaintiff-Appellant and Cross-Appellee, *v.* VERNON O. COMISKEY, Defendant-Appellee and Cross-Appellant.

First District (1st Division)   No. 62383

Opinion filed April 18, 1977.

Charlotte Adelman, of Chicago, for appellant.

Matthew L. Salita, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

On October 26, 1970, M. Marie Comiskey (plaintiff) obtained a judgment for divorce from Vernon O. Comiskey (defendant). Custody of Deborah, a minor adopted child born December 17, 1967, was given to plaintiff with visitation privileges for defendant. Defendant was ordered to pay $250 per month as child support and $300 per month alimony. The judgment also required that defendant pay costs of "extraordinary medical and dental care * * *" for Deborah and that he provide plaintiff with major medical insurance.

On October 31, 1974, plaintiff filed a petition in the circuit court for a rule requiring defendant to show cause why he should not be held in contempt for failure to pay alimony and child support pursuant to the judgment. Defendant subsequently filed petitions to abate and terminate alimony and child support and for custody of Deborah. After extended hearings, the trial court awarded defendant custody of the child and found that he was not in contempt, but ordered him to pay an arrearage in child support and alimony; found that defendant was no longer responsible for providing plaintiff with major medical insurance; and ordered plaintiff to remove defendant's name from the birth certificate of her adopted daughter, Marlene, born December 21, 1970. Plaintiff has appealed.

The evidence shows that sometime after the divorce, with leave of

court, plaintiff moved to a farm in Blanchardville, Wisconsin, where she currently resides with Deborah, who was some 7½ years old at the time of trial. Other members of the household are a 4½-year-old adopted child, two foster children aged 11 and 13, and a married daughter and her husband. Plaintiff keeps a herd of 30 to 40 dairy cows and some other animals on the farm. The farm residence is described as "old" and has seven bedrooms. Plaintiff testified that she had no net income for the past several years and was delinquent in mortgage payments due on the farm. The children who lived with her were assigned chores on the farm and attended a local school.

Defendant owns an insurance agency and lives in a suburb of Chicago with his present wife and her young adult son. They occupy a three-bedroom home valued in excess of $90,000. Defendant's average yearly income is $20,000, though he earned $27,000 in 1974. He paid child support to plaintiff for all of 1971 and 11 months of 1972. He paid alimony for all of 1971 and 10 months of 1972. He also paid plaintiff $1500 in January 1975, pursuant to a court order. He paid her $550 in February of that year and $450 each month thereafter prior to the hearings. Defendant testified that he had not provided medical insurance for plaintiff though he had provided insurance for Deborah since March 3, 1969. He also reimbursed plaintiff for money she had spent for medical care for Deborah beyond the amounts covered by health insurance. He provided plaintiff with an identification card for Deborah's health insurance policy in March 1975.

In his testimony, defendant explained his failure to pay alimony and child support by relating an alleged conversation with plaintiff in May 1972, when plaintiff brought Deborah to his house. He stated that he told plaintiff not to come to his home again as he was going to be remarried and wanted a fresh start. Plaintiff allegedly responded that he would never see Deborah again and that plaintiff did not need his money. He continued to make monthly payments pursuant to the judgment for divorce until November 1972. At that time, plaintiff told him over the telephone that he could not see Deborah. In December of that year, plaintiff hung up the telephone receiver when she heard his voice. He then stopped sending money to plaintiff but he deposited the amounts of alimony and support money he was to have paid her in a savings account every month through July 1973. Thereafter, he withdrew the money for his own use. Defendant made no further attempt to see Deborah and did not petition the court to enforce his visitation rights until after plaintiff began to attempt collection of arrearages from him.

Plaintiff's version of her conversations with defendant in 1972 is somewhat different. She denied the conversation alleged by defendant to have occurred in May 1972. Instead she testified that defendant asked her to give up the children and return to live with him but she refused. In

November 1972, he called and told her that he had remarried and asked plaintiff to send Deborah to visit him. Due to some custody problems with an older daughter, plaintiff told him he would have to visit Deborah in Wisconsin. In December 1972, defendant again telephoned plaintiff and asked that Deborah visit him. Plaintiff informed him that he would have to come to Wisconsin to visit the child. She stated that she had never denied defendant his right to visit Deborah.

The trial court questioned plaintiff's 13-year-old foster daughter, before counsel and the court reporter, in his chambers. She testified that she had lived with plaintiff since August 1974. Plaintiff fed and clothed her. She attended a local school except when the weather was bad or when there were chores to do on the farm which required that she remain home. Her grades had improved during her stay with plaintiff. She and her younger sister had to do chores including milking 20 cows twice daily with an automatic milking machine. Plaintiff was a strict disciplinarian and occasionally "swatted" the older children, but she never beat them. The witness stated that she did not want to return to the farm as she feared plaintiff might have bad feelings toward her due to her testimony. However, she did not think that plaintiff would mistreat the other children on the farm.

The young lady further testified that plaintiff treated Deborah and the youngest child very well. The younger children were assigned easier chores on the farm. In answer to a question by the trial judge, she stated that she did not want Deborah to remain on the farm and do hard work when she grew older, as Deborah was very fragile. However, she felt that plaintiff and Deborah loved each other and had lived together for a long time and would both be hurt if they had to separate.

The 19-year-old married daughter of the parties testified on behalf of plaintiff. She stated she had lived with defendant from 1970 through 1973. He then asked her to leave his home so that his new wife, who had apparently left home due to the girl's presence, would return. She testified that her father drank considerably at that time and was intoxicated 5 days a week. At one time he accused her of being a lesbian. This was based upon an astrology chart made by defendant's second wife. The witness had visited plaintiff's farm and believes that plaintiff is a fit mother for Deborah, while defendant is unfit to have custody of the child.

The defendant's father testified that the preceding witness was "very sad" when she came to live with defendant in 1970. He then related the various material advantages defendant provided for her, including two vacations. He also testified that defendant and this daughter frequently fought with each other.

Plaintiff testified that a doctor had told her that Deborah is a "mosaic

mongoloid" and is therefore frail and must be guarded against severe weather. She referred to several occasions when she had obtained medical treatment for the child in Chicago and also in Wisconsin.

Plaintiff further testified that she adopted another daughter after her divorce from defendant. This child is Marlene, about 4½ years old at the time of trial. The adoption agency knew that plaintiff was divorced. However, she had defendant's name listed on the child's birth certificate as the father, just as she had done when Deborah was adopted. She did not intend to obligate defendant in any manner with regard to the younger child. Defendant testified that Deborah appears to be physically normal. In his opinion, she was shabbily dressed but he conceded that her clothes were always in good repair despite the fact that they were "far from" new.

Defendant's present wife did not testify. At the start of the trial, defendant's counsel stated that he did not intend to call her as a witness so that there was no need to exclude her from the courtroom. Later when the court requested that she testify, plaintiff objected because the witness had been present during the entire trial. The trial court sustained this objection.

In this court, plaintiff contends that it was reversible error for the trial judge to transfer custody of Deborah to defendant; defendant should have been found guilty of contempt for failure to pay alimony and child support; defendant should be required to provide plaintiff with major medical insurance; plaintiff should not be required to remove defendant's name from the birth certificate of the plaintiff's youngest child; the alimony and child support should be increased in view of defendant's economic status and the trial court erred in its computation of the past due amount of child support and alimony and in requiring plaintiff to pay income tax thereon. Each of these contentions will be considered in order.

## I.

The first and most crucial issue is the custody of the child, Deborah. With commendable diligence, both parties have cited a multitude of authorities on this subject. We will briefly note certain of the basic legal principles regarding child custody before applying them to the facts before us.

The parties agree that the primary considerations of a court in a child custody case are the welfare and best interests of the child. (*People ex rel. Morris v. Morris* (1969), 44 Ill. 2d 66, 68, 254 N.E.2d 478; *Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 406-07, 320 N.E.2d 581.) Therefore, the court may modify the custody of a child of divorced parents in accordance with the best interests of the child. (*King v. Vancil* (1975), 34 Ill. App. 3d 831, 834, 341 N.E.2d 65; *Girolamo v. Girolamo* (1972), 5 Ill.

App. 3d 627, 630, 283 N.E.2d 713, *appeal denied*, 52 Ill. 2d 594.) In such a case, the party seeking the change in custody has the burden of proving that the custody provisions of the judgment for divorce should be modified. (*King*, 34 Ill. App. 3d 831, 835; *Hancock v. Hancock* (1974), 24 Ill. App. 3d 679, 681, 321 N.E.2d 95; *Garland v. Garland* (1974), 19 Ill. App. 3d 951, 954, 312 N.E.2d 811.) In the case before us, the burden rested upon defendant to prove that it was in Deborah's best interests that he be awarded custody.

Though the trial court has broad discretion in ordering a transfer of custody, this discretion is not unlimited and is subject to review. (*Fears v. Fears* (1972), 5 Ill. App. 3d 610, 612, 283 N.E.2d 709; *Marcus v. Marcus* (1969), 109 Ill. App. 2d 423, 431, 248 N.E.2d 800, *appeal denied*, 41 Ill. 2d 581.) Such a judgment by the trial court will be reversed if it is contrary to the manifest weight of the evidence. *McDonald v. McDonald* (1973), 13 Ill. App. 3d 87, 90, 299 N.E.2d 787, *appeal denied*, 54 Ill. 2d 597.

■■ In his argument, defendant strongly advances the contention that he can provide Deborah with more material comforts than plaintiff is able to give her. It is true that defendant lives in an apparently comfortable home in a Chicago suburb. He testified that if the child lived with him, he would provide her with a new wardrobe. While it appears that defendant is more affluent than plaintiff, the fact that he can offer the child a more comfortable existence in a more modern residence does not of itself justify the conclusion that he should have custody of the child. (*Vysoky v. Vysoky* (1967), 85 Ill. App. 2d 306, 311, 230 N.E.2d 3.) The child may well have a more comfortable and wholesome existence on plaintiff's farm; particularly now that defendant has resumed payment of alimony and child support.

The evidence before us strongly supports the conclusion that plaintiff makes ample provision for Deborah's needs. The child receives food, clothing, medical attention, supervision and maternal care. (See *Vysoky*, 85 Ill. App. 3d 306, 310.) Though plaintiff appears to be a good disciplinarian, there is no evidence that she mistreated the child. In fact, plaintiff ordered her grown son to leave the farm after a short visit when she determined that he might be an adverse influence on Deborah or the other children who lived at the farm.

Defendant makes much of the reference in the record to the fact that plaintiff's teenaged ward may have become pregnant while under her supervision. Though there are allusions to this state of affairs, the allegations were never established as facts. Further, defendant argues that plaintiff's lack of knowledge as to the whereabouts of this same foster child, who was visiting her mother in Chicago at the time of trial, indicates irresponsibility. However, the record reflects that, after careful

questioning, it became apparent that plaintiff did know the location of the residence of the girl's mother and could describe the building in detail, although she did not recall the street address. Similarly, in our opinion, the incident involving the birth certificate of plaintiff's youngest child does not indicate such lack of responsibility as to render plaintiff unfit to retain custody of Deborah.

■■ In contrast to the mother's attitude toward her child, we note that defendant made no attempt to exercise his visitation rights for over 2 years. He passively accepted plaintiff's alleged verbal assertion that he could not see the child. He failed to petition the court for an order enforcing his visitation rights. During this period, he sent no money to plaintiff to be used for support of the child. His first attempt to obtain custody of Deborah occurred after plaintiff instituted the action concerning alimony and support payments. This court has found that a father's failure to visit his child or to provide for her support may constitute desertion sufficient to terminate his legal rights as a parent. (See *In re Adoption of Vienup* (1976), 37 Ill. App. 3d 217, 345 N.E.2d 742.) Furthermore, the failure of a divorced, noncustodial parent to exercise his visitation rights has been considered important by this court in a case involving custody of a child. (*McDonald*, 13 Ill. App. 3d 87, 89.) In addition, there is some evidence that plaintiff had a drinking problem. This testimony was given by the married daughter of the parties and was limited to the time period before July of 1973. Defendant denied that he drank to excess. See *Shores v. Shores* (1970), 119 Ill. App. 2d 85, 87-88, 255 N.E.2d 214, *appeal denied*, 43 Ill. 2d 398.

The decision of cases involving child custody places a grave duty upon the court which may not be lightly discharged. We are obliged to commence our thinking from the judgment for divorce entered between these parties in October of 1970. Defendant was awarded the custody of Jenise, then approximately 15 years old, and plaintiff was awarded the sole custody of Deborah, then close to 3 years old. We are obliged to recognize the validity of this judgment and in order to obtain its modification the burden rested upon defendant to prove that a change in custody was required for the welfare of the child. *King*, 34 Ill. App. 3d 831, 835.

Able counsel for defendant has meticulously cataloged a number of circumstances which he urges militate against a finding of fitness on the part of plaintiff to continue custody of the child. These contentions include a description of life on the farm as being too burdensome for the child, the alleged pregnancy of the foster child as above outlined, the refusal of plaintiff to permit defendant his right of visitation and the filing of a birth certificate for plaintiff's adopted daughter, Marlene, in which

the name of defendant appeared as father. In certain instances, as above shown, these arguments are contradicted by other evidence in the record. The same observation holds true concerning a number of contentions raised by counsel for plaintiff against defendant. However, considering each and all of these various arguments, we cannot conclude that they are sufficient to justify the drastic stop of changing the custody of this child.

Deborah has remained in the custody of her mother since her infancy. This relationship has been continued pending this appeal by our stay of the order appealed from. She is now approaching the age of 10 years. A change in her custody at this point might well tend to deprive her of the benefit of stability which she now enjoys.

Another factor to be considered is that a change in custody at this point would probably amount to a division of custody between defendant and defendant's present wife. The latter person did not testify although she was present in the courtroom. However, it may well be said that this omission resulted from an objection made by plaintiff and properly sustained by the trial judge upon the ground that she had heard the other witnesses testify despite the exclusion order. Also, the record suggests that in the past the presence of the married daughter of the parties in defendant's household caused his present wife to leave. She did not return until after the daughter left the home, at defendant's request. Thus, we cannot evaluate the problems and complications which may arise from placing part of the responsibility for Deborah upon defendant's present wife.

We are quite aware of the superior vantage point from which the trial judge reached his decision. His observation of the parents and of the child gave him ability "to assess and evaluate their temperaments, personalities and capabilities." (*Marcus*, 24 Ill. App. 3d 401, 407.) Nevertheless, our study of all of the testimony and of the briefs filed by able counsel impel us to the conclusion that the order appealed from is contrary to the manifest weight of the evidence and its enforcement would not be conducive to the welfare and best interests of the child.

■■  The proof before us does not suggest an alternative which would justify destruction of the present harmonious relationship. On the contrary, it is manifest to us that the welfare of this child requires a continuation of her present life with the mother. The order appealed from is consequently reversed in this regard and we direct that proper orders be entered by the trial court continuing the sole custody of Deborah with plaintiff subject to reasonable rights of visitation by defendant.

## II.

■■  We next consider whether defendant was guilty of contempt of court for failing to pay child support and alimony as ordered in the

judgment for divorce. The ruling by the trial court that defendant was not guilty of contempt may be reversed if contrary to the manifest weight of the evidence. (*Daum v. Daum* (1973), 11 Ill. App. 3d 245, 249, 296 N.E.2d 614.) The burden was on defendant to prove that his failure to comply with the judgment order was not wilfull and contumacious and that he had a valid excuse for his failure to pay. *Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587, 593, 323 N.E.2d 571; *Storm v. Storm* (1973), 9 Ill. App. 3d 1071, 1077, 293 N.E.2d 633.

■■ Defendant does not contend that he could not afford to make the required payments, but instead takes the position that he relied on plaintiff's assertions that she would not accept further payments. He did not actually send plaintiff any checks to determine whether she might accept the payments and use them for Deborah's support. In finding that defendant was not in contempt, the trial court noted defendant's practice of placing child support and alimony payments in a savings account instead of sending them to plaintiff, as above described. This practice becomes irrelevant in view of the fact that defendant later withdrew the money from the account for his own use. Defendant testified that he deposited these sums instead of paying them to plaintiff because he "was not allowed to see the child." This attempt at justification is futile. Defendant had a remedy if his right of visitation had actually been denied. The duty to permit visitation is, however, completely independent of the duty to make payment of alimony and support money. Therefore, we find that defendant did not establish that his failure to pay alimony and child support was not wilful or contumacious. His failure to comply with the judgment order constituted a contempt of court.

■■ It does not follow from this result that punishment must be imposed for this contempt. The modification order of July 31, 1975, found an arrearage of alimony of $10,179.86 due plaintiff. This order terminated child support payments and reserved for further order of the court the issue of payment of child support money by plaintiff to defendant. Our order for a stay exempted payment of alimony to plaintiff and expressly continued payment of child support to plaintiff during pendency of the appeal. Consequently, with good reason, we are not informed as to whether any arrearage presently exists in payment of alimony and support money. Even if it does, it is our opinion that the best interests of the child and of these litigants will be served if upon remand the trial court determines the precise amount of such arrearages, if any, and then, with the cooperation of the parties, works out a reasonable program for liquidation of the amounts due. If this payment is thus accomplished, it would follow that defendant has purged himself from guilt of contemptuous conduct. In view of all the facts considered here, it is

directed that payment of support money to plaintiff by defendant, rather than the converse, as suggested in the modification order, should continue.

### III.

The trial court found that plaintiff failed to cooperate with defendant in obtaining and maintaining major medical insurance for her as provided in the agreement between the parties so that plaintiff should be "equitably estopped" from obtaining this benefit. The order modifying the divorce judgment provided that defendant was no longer required to maintain such coverage for plaintiff.

Despite some confusion in the record, we note that defendant stated that he did not provide such coverage for plaintiff for the period from 1972 to 1975. It is not clear whether the insurance was actually provided for her prior to that date. Though plaintiff recalled that defendant may have offered to reimburse her for any health insurance premiums she may have paid, she testified that the offer of reimbursement occurred in 1975. This evidence does not support the conclusion that defendant's failure to provide the required coverage was due to some action on plaintiff's part so that the doctrine of estoppel is operative here.

■■ In our opinion this portion of the modification order is contrary to the manifest weight of the evidence. This portion of the order is reversed so that the judgment for divorce remains in full force and effect regarding the duty of defendant to provide plaintiff with major medical insurance from and after the filing of the mandate of this court in the trial court.

### IV.

■■ Plaintiff also takes issue with the trial court order that she attempt to have defendant's name removed from the birth certificate of her adopted daughter, Marlene. She urges that she was given 90 days to accomplish this and that the trial judge stated that he did not know if such an alteration of a birth certificate was possible. Plaintiff testified that defendant had no part in the adoption and was unaware of the use of his name. Defendant is fully justified in requesting that the certificate be corrected by deletion of his name therefrom. This portion of the order appealed from is affirmed.

### V.

We find plaintiff's contention that the trial court should have increased the alimony and child support payments to be without basis in the record. This issue was not raised by pleadings and was not before the trial court until after the court entered the modification judgment. At that time the trial court stated that he believed that the established figures for these

items were appropriate in view of the evidence presented. However, we do not find that the trial court ever entered any order in accordance with his statement. This phase of the matter is therefore not before us for decision.

## VI.

■■ Finally, we turn to plaintiff's contention that the trial court improperly computed the arrearage in payments due her from defendant and that the court should not have made the payments taxable to her and deductible to defendant for purposes of income tax. With regard to the arrearages, the point has been settled by our direction that upon remand the trial court determine the amount of arrearages of alimony and support money, if any. Though the trial court provided that the amount would be taxable to plaintiff and deductible by defendant for income tax purposes, we can only interpret this as dicta regarding the tax consequences of this transaction. The respective liability of these parties for payment of income tax is far beyond the jurisdiction of this court. We therefore reject plaintiff's contentions with regard to this final issue.

The order appealed from is affirmed in part and reversed in part and this cause is remanded to the trial court for further proceedings consistent with the views above expressed.

Affirmed in part, reversed in part and remanded with directions.

O'CONNOR and BUA, JJ., concur.