Eileen Stickler, Plaintiff-Counter-Defendant-Appellee, v. Paul Stickler, Defendant-Counter-Plaintiff-Appellant.

Gen. No. 49,874.

First District, Fourth Division.
March 24, 1965.
Rehearing denied April 12, 1965.

Paul Stickler, pro se, of Chicago, appellant.

Bellows, Bellows & Magidson, of Chicago, for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

The parties to this suit were divorced by decree entered December 4, 1963, on the defendant's counter-complaint. Custody of their two minor children was awarded to the defendant father, pursuant to an agreement between the parties which was incorporated into the decree. On petition of the plaintiff, an order was entered modifying the decree by changing the custody of the daughter, Meta,[1] age 16, from the father to the mother. It is from this order that defendant has appealed.

█ The agreement entered into by the parties in anticipation of the divorce decree contained a provision to the effect that the children had been living with their father, that they were of a suitable age to exercise their discretion concerning the parent with whom they would reside, and that the father should have their custody, subject, of course, to order of court. Thus, in the first instance the children apparently chose their father's custody, but it appears from the plaintiff's petition that Meta would now prefer to live with her mother. Plaintiff contends that the decretal award of custody, being based on the parties' agreement, was conditional, and subject to change upon expression of Meta's preference at any time in the future. A reading of the agreement and the dispositional provisions of the decree, however, discloses

---

[1] The petition sought no change in the custody of the son of the parties, age 14, who continues to reside with his father.

no such conclusion by the court at that time, and does not substantiate such an interpretation of the decree at this time. The decree was clearly unconditional in its award of custody to the defendant.

When plaintiff's petition was filed Meta was residing with her mother in violation of the divorce decree, and a finding to that effect is included in the order appealed from. While the detailed facts attending her change in residence were apparently examined by the trial judge, we find ourselves unable to consider them because they have not been properly preserved in the record. Nevertheless, enough facts are found within the order itself to enable us to dispose of this case on the merits.

In the order from which this appeal has been taken, the trial judge found that both the father and the mother are fit and proper persons to have custody of Meta; that the father is financially able to support his daughter; that he has done so in the past and is willing to do so in the future; and that the daughter is willing to live with either her father or her mother, as the court might determine, but prefers now to live with her mother. By the express terms of the order, the sole change in circumstances which the court found to have occurred, and which it decided would warrant a change in custody, was the daughter's present desire to live with her mother.

█ The law in Illinois is well-established that our courts will not amend a child custody award unless there has been an actual change in circumstances occurring after entry of the decree, which change makes it apparent that the welfare of the child requires modification of the decree's custody provisions. Nye v. Nye, 411 Ill 408, 105 NE2d 300. As stated by the court in Thomas v. Thomas, 233 Ill App 488, 493: "A decree fixing the custody of a child is final on the conditions then existing and should not be changed

afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child." This quotation was cited with approval in Bulandr v. Bulandr, 23 Ill App2d 299, 303, 162 NE2d 585, where the court stated further that the changed conditions necessary are those which bear upon the fitness of the custodial parent.

We believe that the instant case presents the first occasion in Illinois that the courts have been called upon to decide whether a change in the child's preference is, in itself, a sufficient change in circumstances to warrant modification of the custody award. We are aware of the difficulty a trial judge has in making child custody decisions and we are hesitant to disagree with him in these matters. Nevertheless, we are of the opinion that the welfare of a child will not be served best if a change in custody is granted solely upon the child's own change in preference.

A review of numerous cases on the subject indicates that the courts have been favorably disposed toward awarding custody to the mother where the child involved is of a tender age, e. g., Dunning v. Dunning, 14 Ill App2d 242, 144 NE2d 535. This is not the situation here, however, because Meta is approaching her last year of minority.

Equally apparent from a consideration of precedents is the courts' reluctance to amend a custody award unless there has been an actual change in circumstances demonstrating not only that there would be benefit to the child if the change were allowed, but also that the welfare of the child would be jeopardized if a change in his custody were not made. Maupin v. Maupin, 339 Ill App 484, 90 NE2d 234. Clearly, the courts wish to discourage, except for compelling reasons, continuous or intermittent litigation between the parents over

custody of their children. For these and other reasons the requirements for change have been strict, indeed.

We do not believe that it is necessary to discuss the unpleasantness of contested custody proceedings other than to mention the fact that it may hinder either parent's ability to command the child's respect or to instill in the child a willingness to subject himself to parental discipline—a quality of character which is just as desirable today as it was in biblical times, but which is extraordinarily difficult to achieve in homes which have been disrupted by divorce. We do not believe that it is only the current generation which has been required to face problems of child discipline, but surely our forebears could not have been beset with more formidable obstacles than those confronting the state, the school and the parent at the present time in the matter of teen-age discipline. And if the very existence of parental custody and control were to be left dependent upon the temporary preferential whim —or, perhaps, pique—of the child, a successful rearing to maturity, difficult under ideal circumstances, would be rendered practically impossible.

It is bad enough in the ordinary divorce case to witness the undignified and degrading (though often pathetic and pitiable) spectacle of the competing parents vying for the favors and affections, if not the love, of their child. The putative prize in this sordid contest is also the victim, yet how much worse would be the result if the discretionary decision-making power were, in effect, taken from the court and given to the child himself.

We do not mean to say that a child's preference may not properly be a factor to be considered by the court, but we do mean to say that, when custody has once been awarded, it may not properly be changed on that ground alone. To do so is to abdicate the court's responsibility in favor of one who has no legal capability

■■■■■■■■■■■

and ordinarily very little factual capability of exercising the kind and degree of discretion which is indicated.

It is not suggested that Meta Stickler has been subject to any of the abuses to which we have referred. The facts are unknown to us. We have only the court's finding that Meta has changed her preference as to custodian. No testimony was taken, and there was no finding that the change was necessary for the child's welfare. On the other hand, the court did find that Meta has great love and affection for both her parents and would comply with whatever order the court enters. As mentioned above, the court also found that both parents were fit and proper persons to have custody of their child.

■ Under all these circumstances it is our conclusion that the mere change in a child's preference as to the parent with whom she would like to live is not a sufficient change in circumstances to warrant transfer of the child's custody. The trial court's order will, therefore, be reversed.

■ In view of our decision we find it unnecessary to discuss to any great extent defendant's second point that the procedure of interviewing the child and each of the parties separately in closed chambers is a violation of his rights under due process. A recent decision of this court condoned the practice of interviewing the child in chambers where the parties stipulated to the procedure.[2] Oakes v. Oakes, 45 Ill App2d 387, 195 NE2d 840. We only note that the purpose of such a hearing is to lessen the ordeal for the child and does not extend to the parties. Nor is it intended to make a secret of the basis for the court's findings. As

---

[2] In the case at bar the court found that the parties agreed to waive hearing and to be bound by an order entered after the three private interviews in chambers. However, the court also found that defendant denies any such waiver or agreement.

pointed out in the Oakes opinion, when it becomes necessary to protect the right to appeal, the trial judge should state for the record the substantive parts of the child's statement to him.

The order of the Circuit Court is reversed.

Reversed.

McCORMICK, P. J. and DRUCKER, J., concur.