**Beverle Marcus, Plaintiff-Appellee, v. Stanley A. Marcus, Defendant-Appellant.**

Gen. Nos. 52,708, 52,728. (Consolidated.)

First District, First Division.

April 21, 1969.

Jerome Berkson, of Chicago, for appellant.

Bernard Kaufman, Paul C. Ross, and Meyer Weinberg, of Chicago (Harry G. Fins and Meyer Weinberg, of counsel), for appellee.

MR. PRESIDING JUSTICE ADESKO delivered the opinion of the court.

Plaintiff and defendant were divorced on December 12, 1957. Custody of their minor son, Jeffrey, then aged 3 years, was given to the mother, Beverle Marcus. She remarried twice thereafter. Her second husband died. Subsequently she married a Mr. Tickman, with whom she had two children. Jeffrey appeared to have some emotional problems which caused Judge Robert L. Hunter to appoint Dr. Seymour R. Steinhorn, acceptable to both parents, to examine him. The boy stayed away from his mother's home and expressed a preference to stay with the father or Ruth Marcus, his paternal grandmother.

The mother presented a petition for an increase of child support and for her attorney's fees. The father countered with a cross petition for custody of the child, which was denied by the court. On July 7, 1967, Judge Robert L. Massey ordered the Sheriff of Cook County to place Jeffrey in the Audy Home, a juvenile detention home, after the boy ran away from his mother's home. On July 14, 1967, the decree of divorce was modified by Judge Massey by placing legal custody, care and supervision of Jeffrey with Ruth Marcus, the paternal grandmother. No appeal was taken from this order.

On July 21, 1967, Beverle Marcus, hereinafter referred to as Beverle Tickman, filed a petition, without notice to the defendant or his counsel, in the office of the Clerk of the Court for a rehearing of the July 14, 1967, order.

On August 8, 1967, Bernard B. Rinella, the guardian ad litem previously appointed by the court to represent the boy, received a letter from Robert Hoffman, a unit director of the R. McCormick Chicago Boys' Club, which Jeffrey attended, addressed "To Whom It May Concern." The letter described Jeffrey to be a boy who is spoiled, dislikes taking orders, is a cry baby, has a superior attitude and is a smart aleck. Similar information was sent to one of the attorneys for the mother. The guardian ad litem mentioned the letter to Judge Massey but took no further action until he talked to Robert Hoffman on October 19, 1967, in Judge Massey's Court. This information was not given to Ruth Marcus, Stanley Marcus or their attorney who demanded that said information be presented to the court by written petition. No such petition was ever presented. Judge Massey then granted a rehearing of Beverle Tickman's petition of July 21, 1967, almost 90 days after said petition was filed in the Clerk's office.

Judge Massey heard several witnesses and personally talked to Jeffrey. There was no petition to vacate the July 14 order. There was no evidence of unfitness of

Ruth Marcus to have custody of Jeffrey. She did not carry out the court's directive to arrange for psychiatric treatment for the boy, but in her opinion the boy did not need such treatment and was doing well at school and at home under her supervision.

On November 24, 1967, Judge Massey announced in open court that Jeffrey be sent to St. John's Military Academy and directed the guardian ad litem to procure a transfer of his grades from Lake View High School to St. John's Military Academy and arrange for an interview with the boy at St. John's. The following discourse then took place:

"MR. BERKSON: May I answer this?

"THE COURT: That would be the Court's finding. That would be the Court's order, and at this point, if we can get the co-operation of the mother and father to see this boy gets out there as early as possible, he probably can start the new semester.

"MR. BERKSON: May I now answer this Court? This Court is not making a recommendation he go to St. John's?

"THE COURT: This Court is making an order.

"MR. BERKSON: An order. I don't want to minimize it in any way. I want something that is final so I can take it from that step further.

"MR. ROSS: May I say ——

"MR. BERKSON: May I finish?

"MR. ROSS: I just want to make a suggestion. You are not going to make closing ——

"MR. BERKSON: What says you can make a suggestion?

"THE COURT: I think the Court made the order.

"MR. BERKSON: Would the Court set an appeal bond, if the Court please?

"MR. ROSS: May I just suggest to the Court ——

"MR. BERKSON: May I have an answer, for legally, what I can advise my client ——

426

"THE COURT: You can proceed in accordance
—— ——

"MR. BERKSON: I am asking the Court to set an appeal bond. Does the Court refuse?"

Shortly thereafter the Judge said:

"The Court expects it will retain jurisdiction to comply with this order, and I am asking the guardian to first get the transcript, and two, to see that when the transcript is mailed to St. John's or sent out there, and a reply is sent back, he is ready for an interview or whatever the necessary step is, and it be followed, and then the boy will be delivered out there, and if the boy is not delivered out there to report back to this Court and the guardian will and the Court will take the necessary action to see this order is complied with."

The Judge then spoke to the boy and the following colloquy took place:

"THE COURT: Jeffrey, the Court has talked to you before and has talked to you on different occasions, I believe, and today again after going through this matter and talking to you some couple of weeks ago and getting your vision of what you feel, believes that it would be to your best interests to be enrolled in the St. John's Military Academy, which is a fine school, the kind of school that I would want my own son to go to, and I am asking today that you go out there and make arrangements to become enrolled in that school and talk to the director and the secretary and whoever might be in charge so that you can examine the surroundings and let them show you what they have, and what you can expect out there, and if you would go out there with your mother today.

427

"JEFFREY MARCUS: I won't go out there with her and I won't be with her.

"THE COURT: If you don't go out there, Jeffrey, I am going to have to ask the Sheriff's Office to send up some deputies to take you.

"JEFFREY MARCUS: I will not go. Please don't make me.

"THE COURT: It would be to your best — —

"JEFFREY MARCUS: I will not go. I don't want to go out there and look at it. I want to stay with my father.

"MR. BERKSON: We are entitled to have an order which I can take to the Appellate Court. If you are going to enter an order that he be taken to school, then we are entitled to have an order so we have something—we can base something on.

"THE COURT: That will be the Court's order.

"MR. BERKSON: What is the order?

"THE COURT: He will go to St. John's School. Take him out there.

"MR. BERKSON: Will you set an appeal bond, if the Court please?

"THE COURT: We will get a transcript of the record of his grades and send them out there and some provision will be made as to when he can be enrolled, and I am going to ask you to co-operate.

"JEFFREY MARCUS: I will not go.

"THE COURT: We will have to get a couple of Sheriff's — —

"MR. WEINBERG: I asked leave to file an amended petition to — — for the order — — approve — —

"MR. BERKSON: Where will the boy go?

"THE COURT: There is visitation today anyway.

"MR. BERKSON: Visitation? If the Court please, I suggest — —

428

"THE COURT: I suggest maybe you call the school. See if they can take him out.

"MR. BERKSON: I would like to know what order, —— I am going to tell you now ——

"THE COURT: I told you what my order is.

"MR. WEINBERG: I will prepare an order in due course.

"MR. BERKSON: Filing an order in due course? I want to present an order at 2:00 ——

"MR. WEINBERG: I will present ——

"MR. BERKSON: That is the point. They are trying to subvert your order. We will be back here on Monday. This boy does not have to go anyplace.

"THE COURT: Order in the Court or someone will be held in contempt.

"MR. BERKSON: Mr. Marcus, please ——

"THE BAILIFF: You don't scare me, sir.

"THE COURT: Unless you control your client ——

"JEFFREY MARCUS: I refuse to go out there. I won't go out there.

"THE COURT: Prepare the order by Monday.

"MR. BERKSON: There should be a status quo at this time."

On November 27, 1967, no written order was presented to the court. The boy was taken to St. John's Military Academy but refused to stay there. The court continued the matter to December 1, 1967. Defendant then filed his notice of appeal to this court. The First Division of the First District of the Appellate Court, on December 6, 1967, after considering appellant's motion for supersedeas and to set and approve an appeal bond and the appellee's motion to dismiss appeal for lack of an appealable order, instructed appellant to secure and file in the Appellate Court, the order of the trial court from which

he seeks an appeal. On January 4, 1968, the trial court entered the following order:

"IT IS THEREFORE ORDERED:

"A. That BEVERLE MARCUS, now known as BEVERLE TICKMAN, who has legal custody of JEFFREY MARCUS, be and is hereby granted leave to enroll JEFFREY MARCUS, child of the parties, in the St. John's Military Academy, which enrollment is necessary to the welfare of the boy.

"B. That the Guardian ad Litem, BERNARD RINELLA, shall arrange with the said school that monthly reports as to his progress be made to this Court.

"C. That neither STANLEY A. MARCUS or BEVERLE MARCUS TICKMAN, the father and mother of the child, shall visit the boy at the said school until further Order of this Court.

"D. That the nature of the enrollment of the boy in the said school and his continued residence at school selected shall be reviewed and reconsidered and hearing had thereupon at the end of the next semester within the program of the said school.

"E. That the prior pending petitions and matters as to payment fees for counsel for BEVERLE MARCUS TICKMAN, fees for BERNARD RINELLA, Guardian ad Litem, unpaid bills for Dr. Seymour Steinhorn, are all continued generally until further order of this Court.

"This Court believed when it continued the matter on November 24, 1967, and thereafter, and still believes, that further evidence should be taken by the Court as to the enrollment of JEFFREY MARCUS, child of the parties, in a private school with psychological and psychiatric facilities for him because a final determination of the issue in this cause so germaine to his welfare so demand it. However, this Court having been advised that the Appellate Court, First District, First Division, has instructed counsel

430

to inform this Court to enter an Order, enters this Order in obedience to the directions of the Appellate Court and not of its own volition."

The said order of January 4, 1968, on motion of the appellant was included in the record herein on appeal by way of an amended notice of appeal.

██ Courts are primarily concerned with the welfare of a child in legal controversies involving custody of children. The record in this case reveals that the trial judge had the best interest of Jeffrey uppermost in his mind. However, in spite of this motivation, the court must follow established and accepted rules in dealing with the instant situation. The July 14, 1967, order placed Jeffrey's custody with his paternal grandmother, under whose supervision the boy was attending school and was adjusting to a new environment. The Beverle Marcus' petition for rehearing of the July 14th order was filed in the Clerk's office, without notice to counsel for Stanley Marcus. Therefore, no answer to the petition was filed and such petition was not set for hearing. Consequently, the issues raised in that petition have not been adjudicated by the court. The order of July 14th was not vacated, nor was the relief prayed for granted.

██ Upon careful scrutiny and consideration of the record before us, we are of the opinion the evidence presented to the court was insufficient to warrant a change of custody of Jeffrey from his paternal grandmother, Ruth Marcus. After a divorce decree in this State, the custody of children is always subject to the order of the court which entered the decree, and such decree may be changed from time to time as the best interests of the children demand. It is true the trial court is given a large discretion in awarding custody of minor children. However, such discretion is a judicial one and is not unlimited; it is subject to review. Cohn v. Scott, 231 Ill 556, 83 NE 191 (1908). Upon the testimony of Mr. Hoffman, the camp counselor, as to what he observed at the Morse

Avenue Beach, and the testimony of Mr. Rinella and Mr. Weinberg (Jeffrey's guardian ad litem, and Beverle Marcus Tickman's counsel), the trial court concluded Jeffrey would be enrolled in St. John's Military Academy, and this conclusion was apparently based upon the suggestion of the plaintiff, Beverle Marcus Tickman. The other evidence relating to Jeffrey's alleged need for psychiatric help consisted of the testimony of Dr. Steinhorn. His only contact with Jeffrey was a fifty-minute examination in November, 1966, (a year prior to the incident on the beach) and his impression from this examination of Jeffrey was that Jeffrey was seriously disturbed and definitely in need of psychiatric treatment. In Vysoky v. Vysoky, 85 Ill App2d 306, 230 NE2d 3 (1967), the court held that a party seeking to alter the custody provisions of a decree has the burden of proving that the child's best interests require such a change. In the instant case, there was no evidence of Ruth Marcus's unfitness to have custody of Jeffery, and there was no showing of a substantial change in conditions warranting a modification of the custody decree.

■ We agree the trial court was not bound by Jeffrey's preference in the choice of custody the trial court was to determine. Stickler v. Stickler, 57 Ill App2d 286, 206 NE2d 720 (1965) ; Strouse v. Strouse, 75 Ill App2d 362, 220 NE2d 485 (1967). Nevertheless, we believe the positive refusal of Jeffrey, a young man of fourteen years of age, to go to St. John's Military Academy should not have been ignored by the trial court. His absolute refusal to live with his mother, Beverle Marcus, and his stated preference to remain with Ruth Marcus, his paternal grandmother, was certainly entitled to serious consideration by the trial court. Stickler v. Stickler, supra; Strouse v. Strouse, supra. We do not infer that the court should have decided this issue solely upon the wishes or preference of Jeffrey; rather, the adamant refusal to attend a miltary school, or to have any contact with his mother,

432

should have indicated to the court that Jeffrey's best interests and welfare were not to be "best served" by following that course of action.

■ In view of our holding, the question of Beverle Marcus' December 7, 1967, petition for an attachment to produce Jeffrey Marcus before Judge Massey, because of Ruth Marcus' success in regaining physical custody of Jeffrey by virtue of a Writ of Habeaus Corpus issued by the Circuit Court on December 6, 1967, has become moot, and we express no opinion upon such question arising from the above actions of the parties involved. Such cause was docketed in this court as cause No. 52728, and upon motion of the appellant, was later consolidated with cause No. 52708.

For the foregoing reasons, the orders of the trial court dated November 24, 1967, and January 4, 1968, are reversed.

Decree reversed.

MURPHY and BURMAN, JJ., concur.