FRED CANHAM, Respondent-Appellant, *v.* EDITH SAISI, a/k/a Edith Canham, Petitioner-Appellee.

First District (5th Division)   Nos. 78-126, 78-407 cons.

Opinion filed October 27, 1978.

Joseph B. Platt, of Chicago, for appellant.

G. Wallace Roth, of Chicago (Francis X. Riley, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from an order changing the custody of the couple's two minor children from respondent (father) to petitioner (mother). Respondent presents the following issues for review: whether the trial court abused its discretion (a) by changing custody based solely upon the preference of the minor children; and (b) by granting attorney's fees and costs to petitioner for the defense of this appeal.

Petitioner and respondent were married in 1955 and divorced in 1963 with custody of Joan, born March 27, 1960, and Tom, born August 1, 1961, awarded to petitioner. In 1966 by an agreed order the divorce decree was amended granting custody of the children to respondent. He and his present wife provided a home for both children until December 1975 when Tom ran away to live with petitioner and her present husband. Six months later Joan also abandoned her father's home to live with petitioner who then brought this change of custody proceeding.

A hearing was held on September 21, 1977, at which it was adduced that Joan was 17½ and Tom 16 years old; that they had each left their father's home voluntarily; that when Tom ran away his father took no action on the assumption that he would return in a week or two; that as the result of certain occurrences the children had developed hardened attitudes toward their stepmother; and that they were now happy and wished to remain in their mother's home. The trial court noted that as the children were nearing the age of legal majority it would adhere to their wishes unless a showing was made that living with petitioner would not be in their best interests.

The record indicates that, for the most part, the children's life with their father and stepmother ran smoothly. Joan was an excellent student; spent time with her stepmother playing tennis and shopping; and reached an agreement with her stepmother to share the housework and the care of her young stepsister. Tom, however, was a poor student, who was grounded because he cut class and received failing grades although he was offered cash bonuses for passing marks. He did, however, work part-time in his father's television repair shop doing basic maintenance work. Both Joan and Tom were paid for the above-mentioned chores, were provided with their own rooms, and were given televisions, stereos, and 10-speed bicycles.

During oral argument before this court, the parties agreed that the appeal regarding Joan was moot as she had reached legal majority. Consequently, only such facts as relate to Tom need be summarized. In this regard it appears that discord in the house began sometime prior to December 1975 when Tom was accused of certain misconduct by his father[1] and his father demanded that he do certain things in reparation. In December 1975 his father made another similar accusation and again demanded certain conduct of Tom which was possible only if the accusation was correct. Upon receiving this ultimatum from his father, Tom went to live with his mother who transferred him the next day to a school located near her home.

At the hearing Joan and Tom testified that he had not committed the act of misconduct allegedly occurring in December 1975. Respondent testified that Joan had notified him of the misconduct but Joan denied this. Joan and Tom further stated that their stepmother found Tom's presence in the house burdensome; that she had announced to each of them that she would use any device to drive him out of the home; and she had warned them that a report of this scheme to their father would be unavailing as he would believe her rather than either of them. Neither respondent nor his wife were asked whether such a scheme was devised or executed, but he testified that the children did not complain to him of any problems with their stepmother.

During the years Tom lived with his father his grades were low but passing; however, during the year and a half he lived with his mother he failed three successive semesters. While such failure was in part attributable to poor scholarship, the primary cause was frequent absences—only some of which could be traced to legitimate excuses such as court appearances and illness. Petitioner and her husband employed

---

[1] We have given serious consideration to the alleged acts of misconduct and the evidence relevant to the truth or falsity of such accusations. However, because a minor is involved and no useful purpose would be served in setting forth the details of the alleged acts, we will refrain from doing so.

the same remedial techniques as had respondent and his wife; *i.e.*, grounding Tom for cutting class and poor scholarship, and helping him with his school work. Moreover, petitioner testified that at her request the school was notifying her immediately of each absence and that in the weeks since the commencement of the 1977-78 school year Tom's teachers had reported that he was improving.

After finding that remaining with petitioner was in the best interests of the children, the trial court awarded custody to her and based upon respondent's gross income of $13,500 per year ordered him to pay $50 per week for support. Although petitioner was denied trial-related attorney's fees and costs, the trial court three months later ordered respondent to pay fees in the amount of $2000 and costs of $250 for her defense of this appeal.

OPINION

Respondent first contends that the trial court abused its discretion by transferring custody. His position is that the evidence shows petitioner is unfit; that awarding her custody is not in the best interests of the child; and that changing custody here was a violation of parental rights. We cannot agree.

■■ Based upon a substantial change in circumstances since the divorce decree (or an amended decree) and upon consideration of the best interests of the child, the trial court may as an exercise of sound discretion order a transfer of custody. (*Eggemeyer v. Eggemeyer* (1967), 86 Ill. App. 2d 224, 229 N.E.2d 144.) In reviewing custody decisions, it has been noted that:

> "In the first reported decision involving custody of a child, (see First Kings 3:16), Solomon, vested with plenary powers and unhampered by precedent, rendered a judgment which has been cited through the ages as incontrovertible evidence of his great wisdom. Today, a trial judge is almost daily presented with custody problems which are far more complex. [Citations.]
>
> In Jenkins v. Jenkins, 81 Ill App 2d 67, at page 71, 225 NE2d 698, the Court said: 'It must be emphasized that custody cases present among the most vexing and difficult situations facing a trial judge in the discharge of his duties. Generally, no decision a court makes in such cases can be considered either 'right' or 'wrong.' The responsibility of a judge is, instead, to exercise his own best judgment in attempting to find the most satisfactory solution under all the circumstances in each case.' " (*Elble v. Elble* (1968), 100 Ill. App. 2d 221, 225-26, 241 N.E.2d 328, 331.)

As will be detailed below, those cases involving teen-aged children who have left the home of the custodial parent to live with the other parent

and express a desire to remain in the latter's custody are certainly among the most difficult for a trial court to decide.

In *Stickler v. Stickler* (1965), 57 Ill. App. 2d 286, 206 N.E.2d 720, a 16-year-old girl left her father's home to reside with her noncustodial mother. Based solely upon the child's desire to live with her mother, the trial court ordered the custodial change without hearing testimony as to whether it was in her best interests to have left the father's home. The trial court did find, however, that the child loved both parents and would comply with whatever order was rendered. After noting both the likely frustration of teenage discipline should custody follow the temporary preferential whim of the child and the tendency of competing parents to vie for the favors and affection of the child, the *Stickler* court held that under the circumstances the child's preference alone could not support a change of custody.

In *Elble v. Elble*, a 17-year-old girl was living with her noncustodial mother. In answer to the mother's petition for a change of custody, the father stated "that plaintiff [mother] had 'defied orders of this court respecting custody of the child,' that it has become impractical, if not impossible, physically to coerce Gail to remain with him, [and] that to 'maintain peace' he has allowed her a wider latitude in association with plaintiff." (100 Ill. App. 2d 221, 223, 241 N.E.2d 328, 329.) The trial court denied the change of custody but stated "that it could not, and would not, 'force a 17-year-old girl to live with her father if she does not desire.' " (100 Ill. App. 2d 221, 223, 241 N.E.2d 328, 330.) Defendant was then ordered to pay plaintiff support for his daughter. On appeal he argued that ordering him to pay support was tacit approval of plaintiff's unlawful custody and control of the child. After noting that while the child's preference alone was not sufficient to warrant a transfer of custody, a father's duty to support his minor child is unaffected by divorce and that the Divorce Act (Ill. Rev. Stat. 1967, ch. 40, par. 19) grants the trial court wide latitude to provide for the care, custody and support of children, this court found the trial court's solution was the most satisfactory under the circumstances.

In *Marcus v. Marcus* (1969), 109 Ill. App. 2d 423, 248 N.E.2d 800, a 14-year-old boy repeatedly ran away from the home of his custodial mother. The trial court ordered that custody be transferred to the paternal grandmother but upon rehearing returned custody to the mother. On appeal this court reversed the transfer of custody from the child's paternal grandmother to his mother stating:

> "We agree the trial court was not bound by Jeffrey's preference in the choice of custody the trial court was to determine. [Citations.] Nevertheless, we believe the positive refusal of Jeffrey, a young man of fourteen years of age, to go to St. John's

Military Academy should not have been ignored by the trial court. His absolute refusal to live with his mother * * * and his stated preference to remain with * * * his paternal grandmother, was certainly entitled to serious consideration by the trial court. [Citations.] We do not infer that the court should have decided this issue solely upon the wishes or preference of Jeffrey; rather, the adamant refusal to attend a military school, or to have any contact with his mother, should have indicated to the court that Jeffrey's best interests and welfare were not to be 'best served' by following that course of action." 109 Ill. App. 2d 423, 432-33, 248 N.E.2d 800, 805.

In *Swanson v. Swanson* (1971), 1 Ill. App. 3d 753, 274 N.E.2d 465, a 15-year-old girl had a healthy relationship with her mother, father and their respective spouses but induced her noncustodial father to seek a transfer of custody because she believed that fewer restrictions might be imposed on her in his household. There we held that a transfer of custody based on the preference of the child is appropriate only where it is grounded upon reasons related to the child's welfare and best interests.

In summary we believe that the rule is best stated in *Swanson* and it is within this framework that we must consider whether the trial court's order was an abuse of discretion.

Here, although Tom for many years enjoyed good relationships with the members of his father's household, the parties recognize that his attitude toward his stepmother and toward rejoining his father's household have hardened to the point that his return would have to be coerced. If the testimony of respondent and his present wife is to be believed, Tom was merely reacting to proper parental discipline and his custody ought to continue in respondent. (See *Filipello v. Filipello* (1971), 130 Ill. App. 2d 1089, 268 N.E.2d 478.) On the other hand both Joan and Tom testified that he was unjustly accused of certain acts of misconduct and that their stepmother was hostile to his presence and had vowed to use any device to drive him from the home. Under these circumstances Tom's preference to live with his mother was based upon reasons related to his welfare and best interests. (*Swanson v. Swanson.*) As the trial judge, who was in the best position to assess the credibility of the witnesses, chose to believe the latter witnesses, we cannot say that he erred in determining that there had been a material change of circumstances and that forcing Tom to return to respondent would be detrimental to his best interests.

Turning to the question of whether living with petitioner was in Tom's best interests, the evidence showed that he was required to perform chores and to be home by curfew. Although he had failed three successive semesters while living with her, she testified that the school had

recently reported that he was improving. As success in school has always been difficult for Tom, we cannot say that his failures are chargeable to a variance of standards imposed by his respective parents as opposed to other variables. Therefore, we believe the record as a whole supports the trial court's determination that Tom's best interests required a transfer of custody to petitioner.

Respondent next contends that the trial court abused its discretion by awarding $250 costs and $2000 attorney's fees to petitioner for the defense of this appeal. We agree.

Prior to October 1, 1977, the allowance of attorney's fees and costs in divorce proceedings was governed by section 15 of the Divorce Act. (Ill. Rev. Stat. 1975, ch. 40, par. 16.) Since that date, section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 508) provides for attorney's fees and costs as follows:

> "(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following.
>
> ❋ ❋ ❋
>
> (3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders."

■■■ Applicable to section 508 is the law found in cases interpreting the repealed section 16 which have held that the allowance of fees in divorce proceedings is a matter for the sound discretion of the trial court (*Ylonen v. Ylonen* (1954), 2 Ill. 2d 111, 117 N.E.2d 98), and as stated in *Kuhns v. Kuhns* (1972), 7 Ill. App. 3d 884, 288 N.E.2d 884:

> "In determining whether an allowance of fees is proper, it is necessary to examine the circumstances which initiate the invocation of judicial proceedings for relief. [Citation.] And where the party upon whom the fees are sought to be imposed has done nothing which necessitated or required judicial action, the allowance of fees is error. [Citation.]" (7 Ill. App. 3d 884, 886, 288 N.E.2d 884, 886.)

(Accord, *Matthews v. Matthews* (1976), 42 Ill. App. 3d 1049, 356 N.E.2d 1083; *Mabbatt v. Mabbatt* (1967), 78 Ill. App. 2d 455, 223 N.E.2d 191.) Furthermore, the party petitioning for fees must show financial inability to pay and the ability of the other spouse to do so. (*Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661.) Financial inability has been defined as the stripping of one's means of support or the undermining of economic stability should available funds be disbursed in payment of

such fees. *Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282.

■■ Beyond the above criteria, the fees must also be reasonable in amount. In this regard it has been stated:

"The amount of fees to be allowed in a divorce proceeding depends on the consideration of * * * the nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of responsibility involved, the standing or skill of the person employed, and the time and labor involved. (*Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661; *Greenbaum v. Greenbaum* (1973), 14 Ill. App. 3d 217, 302 N.E.2d 165.) The allowance should be only in such amount as will compensate for the services rendered, and must be fair and just to all parties concerned; namely, the attorney to be compensated, the client, and the person required to make the payment. (*Green v. Green.*) Furthermore, it should appear that the work being compensated for was reasonably required and necessary for the proper performance of the legal services involved in the case. [Citation.]" (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 582, 373 N.E.2d 576, 579.)

Moreover, it has been frequently noted that the time expended by the attorney as shown by detailed records is a factor of great importance in ascertaining the fee which is reasonable in amount. *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897; *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1; *In re Estate of Weber* (1978), 59 Ill. App. 3d 274, 375 N.E.2d 569.

■■ Here it appears from the testimony that petitioner and respondent each own a home subject to a mortgage but that the former is unemployed and without any income or other property, although she has remarried. Respondent testified that his gross yearly income was $13,500, a weekly gross of about $260, but while respondent's ability to pay is necessarily limited by the payment of taxes and his expenses which include child support for Tom as well as the support of his present wife and their minor daughter, we do not believe that petitioner should be expected to deplete what little resources she has in the defense of this appeal. We are unable to determine from the record, however, any basis for appeal fees in the amount of $2000. The fees were allowed three months after the custody order appealed from but no evidence was offered on time spent or expected to be expended on the appeal. Neither does the record otherwise support the reasonableness of the fees ordered as required by section 508(a)(3).

■■ Moreover, we also find no support in the record for the order

694

requiring respondent to pay costs in the amount of $250. Petitioner was not required to provide any report of proceedings and no showing was made as to any costs either incurred or reasonably expected to become owing.

■■ We would note further that we find no merit in respondent's argument that he has done nothing which necessitated or required judicial action to justify an order requiring him to pay fees and costs on appeal. Joan and Tom testified that their stepmother vowed to drive him from the house and that she said respondent would not listen if they attempted to talk to him about this situation. Furthermore, at the time petitioner took action to transfer custody respondent had acquiesced at least temporarily in Tom's change of residence by taking no action to restore his custodial right. Under the circumstances we believe he did contribute to her need to clarify her rights under the amended divorce decree.

For the reasons stated, the order requiring respondent to pay attorney's fees and costs is reversed and this matter will be remanded for a hearing to determine reasonable fees and costs.

Accordingly, the judgment appealed from in cause 78-126 granting custody to petitioner is affirmed but the judgment in cause 78-407 as to attorney's fees and costs is reversed and remanded for further proceedings consistent with the views stated in this opinion.

Affirmed in part; reversed in part and remanded.

LORENZ and MEJDA, JJ., concur.