*In re* MARRIAGE OF ALVIN RAIDBARD, Petitioner-Appellant, and MARILYN RAIDBARD, Respondent-Appellee.

First District (1st Division)   Nos. 79-1541, 79-1551 cons.

Opinion filed July 28, 1980.

Benjamin Di Giacomo, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Gukiina & Merritt, of Chicago (Freda R. Merritt, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

These consolidated appeals have been taken by Alvin Raidbard (petitioner) from post-judgment orders which increase child support from $300 to $850 per month and require petitioner to pay a $5000 fee to attorneys for Marilyn Raidbard (respondent). The trial court also entered a partial stay of the order modifying the support payments. Respondent has cross-appealed from this stay.

A judgment for divorce was entered on November 15, 1972. Respondent was granted custody of the two-year-old daughter of the parties. Petitioner was ordered to pay child support which increased as his income did with a maximum amount of $300 per month if his income reached $12,000 per year. On May 25, 1979, the trial court increased the child support from $300 to $850 per month commencing as of March 1, 1978. The order required respondent to pay all expenses of the child except extraordinary medical, dental, or psychiatric expenses. Petitioner was to pay respondent $4500 to cover the arrearage from March 1, 1978, to May 31, 1979. On July 30, 1979, and on August 10, 1979, respondent filed petitions for attorneys' fees. On August 17, 1979, the trial court entered an order for payment of $5000 to respondent's attorneys. On August 3, 1979, the trial court ordered petitioner to continue to pay respondent the former amount of child support, $300 per month, and to pay the balance of $550 per month and the arrearage of $4500 to the clerk of the circuit court pending disposition of the appeal.

As a preliminary matter, we find these proceedings are governed by the Illinois Marriage and Dissolution of Marriage Act effective October 1, 1977 (Ill. Rev. Stat. 1979, ch. 40, par. 101 et seq.). This Act by its terms "applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered." (Ill. Rev. Stat. 1979, ch. 40, par. 801(b).) See Staub v. Staub (1978), 67 Ill. App. 3d 1004, 1006, 385 N.E.2d 771. Compare In re Marriage of LaSusa (1979), 80 Ill. App. 3d 467, 400 N.E.2d 21.

## I.

On the issue of child support, petitioner contends the trial court looked only at petitioner's increased income and ignored the actual needs of the child, the improved financial status of the mother, and the indebtedness of the father.

■■ In Illinois child support is a continuing obligation " 'subject to change as the conditions and circumstances of the parties warrant.' " (*Sharp v. Sharp* (1978), 65 Ill. App. 3d 945, 947, 382 N.E.2d 1279, quoting *In re Fisher* (1958), 15 Ill. 2d 139, 151, 153 N.E.2d 832.) In modifying support payments, the court must inquire whether sufficient cause has intervened since the entry of the judgment to authorize the court to modify the allowance. (*Swanson v. Swanson* (1977), 51 Ill. App. 3d 999, 1000, 367 N.E.2d 512, *appeal denied* (1977), 66 Ill. 2d 642.) The new or changed circumstances must be material or substantial. (*Sharp*, 65 Ill. App. 3d 945, 947.) In this regard, courts consider both the circumstances of the parents and the children. (*Sharp*, 65 Ill. App. 3d 945, 947; *Sullivan v. Sullivan* (1978), 57 Ill. App. 3d 958, 963, 373 N.E.2d 829.) The specific factors to be considered include the financial resources of the child, financial status and needs of the custodial parent, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the child and his educational needs, and the financial ability and needs of the noncustodial parent. Ill. Rev. Stat. 1979, ch. 40, par. 505; *In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574, 576, 403 N.E.2d 323.

Considering these factors in the case before us, we conclude petitioner's ability to pay has increased substantially since the 1972 divorce judgment. Prior to that time, petitioner had gone to medical school in Europe and was waiting admission to practice in the United States. He was then employed as a temporary elementary school teacher. His salary varied with the number of days he worked. Petitioner earned approximately $8000 in 1972. He was licensed to practice medicine in Illinois on November 29, 1974.

Petitioner presently operates a medical center through a corporation in Chicago. His 1977 corporate income tax return reflected income of $70,000. Petitioner testified his net income for that year was $30,000. This apparent discrepancy remains unexplained. His W-2 form for 1978 stated his personal income as $62,000. He has a savings account of $1800 and a checking account of $1700. Petitioner's corporation has two checking accounts, one with a balance of $3000 to $4000 and the other with an unknown balance. Petitioner claims he has substantial debts because of his business. He also remarried, and he and his present wife have one son.

At the time of the hearing, respondent was employed as a sales representative and earned $200 per week plus commission. She had a

savings account of $500. Since that hearing, respondent was transferred to the Los Angeles metropolitan area to assume a new position which was a "substantial advancement" over her previous job. A petition unrelated to these proceedings, filed by petitioner, shows respondent's earnings increased by $100 per week. The respondent calculates her personal expenses at $1039 to $1054 per month. Many of respondent's expenses appear reasonable. Several, however, are vigorously disputed. These include $56 for telephone, $350 for food, $50 to $60 for auto repair, and $140 for auto maintenance.

Respondent testified the expenses of the child, now 10 years old, total from $788 to $828 per month. These expenses include newspapers and magazines, clothes, grooming, educational books, babysitters, various lessons, orthodontist visits, birthday party gifts, synogogue, Hebrew school tuition, drugs, dentist bills, vacation, and social worker bills. Some of these expenses were subject to dispute. Respondent first testified the child needed $25 per month for birthday party gifts; however, on cross-examination she testified the amount was only $6. Respondent listed $100 for vacation cost, but testified this provided for both her and the child. Respondent listed $160 to $200 per month as cost of a "social worker." This item actually had reference to psychiatric or psychological assistance for the child, a need which no longer exists.

Prior to the hearing, these items were not always paid by the respondent. Petitioner testified he contributed approximately $1000 per month for several of these expenses in addition to his regular support payment. The child received free medical care due to professional courtesy, and the child's grandparents paid for her religious education.

■■ It appears to us many of these various expenses could not have existed at the time of the 1972 judgment for divorce. Quite aside from these matters, the increased needs of the child may well be presumed from the undeniable facts that the child has grown older and the cost of living has risen. (*In re Marriage of Ebert* (1980), 81 Ill. App. 3d 44, 47, 400 N.E.2d 995; *Sharp*, 65 Ill. App. 3d 945, 948; *Swanson*, 51 Ill. App. 3d 999, 1001.) Furthermore, the court may consider the standard of living the child would have enjoyed had the marriage not been dissolved. Ill. Rev. Stat. 1979, ch. 40, par. 505(a)(3).

■■ Upon detailed consideration of the record, we have concluded that an increase of child support payments to $650 per month is equitable to both parties and required by the evidence. The support payments are accordingly fixed at $650 per month commencing as of June 1, 1979.

## II.

On May 25, 1979, the trial court modified the judgment for divorce and also gave respondent's attorneys "leave to file their [p]etitions for

[f]ees within fifteen (15) days from the date of the order." Respondent filed petitions for attorneys' fees on July 30, 1979, and on August 10, 1979. The trial court ordered petitioner to pay attorneys' fees of $5000 to respondent's former counsel.

■■ Petitioner first contends the trial court lacked jurisdiction to award fees because the notice of appeal was filed before the petition for fees was filed. We disagree. The order of May 25, 1979, reserved the issues of attorneys' fees to the jurisdiction of the trial court. The pertinent statute vests the trial court with broad powers in connection with allowance of attorneys' fees. (Ill. Rev. Stat. 1979, ch. 40, par. 508.) The filing of the first notice of appeal did not operate to divest the trial court of the power to allow attorneys' fees. In the instant case the trial court retained jurisdiction pertaining to allowance of attorneys' fees which was "independent of and collateral to the subject matter of the order from which" the first appeal was taken. *In re Estate of Lucas* (1978), 71 Ill. 2d 277, 281, 375 N.E.2d 112.

Petitioner also contends the respondent should pay her own attorneys' fees and the $5000 award was excessive. The statute provides the trial court, after considering the resources of each spouse to pay, may order either spouse to pay a reasonable amount for costs and attorneys' fees necessarily incurred by the other. (Ill. Rev. Stat. 1979, ch. 40, par. 508(a)(2).) The movant must show financial inability to pay and the ability of the other spouse to pay. (*In re Marriage of Pedersen* (1979), 77 Ill. App. 3d 716, 720, 396 N.E.2d 659; *In re Custody of Scott* (1979), 75 Ill. App. 3d 710, 714, 394 N.E.2d 779.) The decision in regard to fees "rests within the sound discretion of the trial court." *Scott*, 75 Ill. App. 3d 710, 714.

■■ In the instant case, the record reveals the financial circumstances of the parties as above shown. While petitioner's resources reflect a financial ability to pay, respondent's resources fail to show the same. The trial court was justified in requiring the petitioner to pay fees to the respondent's attorneys.

Respondent's petition for fees, filed July 30, 1979, alleges her attorneys represented her in the post-judgment proceedings since November 17, 1977. They spent "approximately" 24 hours of court time and 35 hours of office time and incurred "approximately" $100 for costs and expenses. Respondent's petition for fees filed August 10, 1979, alleges respondent's attorneys represented her in the post-judgment proceedings since November 17, 1977. It alleges her attorneys expended "approximately" 34 hours of court time and 50 hours of office time and incurred "approximately" $100 for costs and expenses.

In determining the amount of fees to be awarded, the court will

consider several factors including "the nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of the responsibility involved, the standing or skill of the attorney employed and the time and labor involved." (*Pedersen*, 77 Ill. App. 3d 716, 720.) The award must be in such amount "as will compensate for the services rendered, and must be fair and just to all parties concerned; * * *." (*Canham v. Saisi* (1978), 65 Ill. App. 3d 686, 693, 382 N.E.2d 654, citing *Green v. Green* (1976), 41 Ill. App. 3d 154, 169, 354 N.E.2d 661.) The time spent must have been reasonably required and necessary for the proper performance of the services involved. (*Canham*, 65 Ill. App. 3d 686, 693, citing *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 582, 373 N.E.2d 576, *appeal denied* (1978), 71 Ill. 2d 602.) "The allowance of attorneys' fees is within the sound discretion of the trial court and such an award will not be reversed unless the trial court has clearly abused its discretion." (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 599, 400 N.E.2d 56.) However, "a court of review will not hesitate to reduce the fees awarded if they are unreasonably high." *Donnelley*, 80 Ill. App. 3d 597, 602.

■■ The record before us demonstrates no such complexity as would be reasonably required to justify an award of $5000. In addition, "[m]ore must be shown to justify an award of fees than a compilation of hours and an hourly rate." (*Pedersen*, 77 Ill. App. 3d 716, 720.) Here we do not have even a suggested hourly rate. It was also necessary for respondent's attorneys to itemize the time expended and the work done. (See *Sharp*, 65 Ill. App. 3d 945, 950.) The "time expended by the attorney as shown by detailed records is a factor of great importance in ascertaining the fee which is reasonable in amount." (*Canham*, 65 Ill. App. 3d 686, 693.) The record here reflects no time records of any kind. There is only a statement of the approximate number of hours contained in unverified petitions without itemization.

We accordingly reverse the allowance of attorneys' fees to respondent. The cause is remanded for a new hearing to be predicated upon a proper petition and itemized time statements.

### III.

As above shown, on August 3, 1979, the trial court set an appeal bond and directed petitioner to pay the increased amount of support and arrearage of $4500 to the clerk of the circuit court. The order provided these sums were to be retained by the clerk until further order of the court. Respondent contends in her cross-appeal the order is erroneous because it contravenes section 413 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 413(a)), which provides:

"An order directing payment of money for support or maintenance of the spouse or the minor child or children shall not be suspended or the execution thereof stayed pending the appeal."

We reject respondent's contention. It is apparent that the matter of providing for stays is reserved exclusively to the supreme court under its rule-making power. Thus, the attempted legislation which would curtail this power would appear to be invalid. (See *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 403 N.E.2d 1036.) However, we need not decide that issue. We are not dealing here with a stay of support money. On the contrary, petitioner has apparently been paying the sum of $300 per month as support. The trial court has simply postponed payment of the increased amounts pending appellate review. In addition, the problem should be resolved upon filing of this opinion and the matter will then shortly become moot. Consequently, the order of August 3, 1979, subject of the cross-appeal is affirmed.

Accordingly, the order of May 25, 1979, is modified by reducing the amount of child support from $850 to $650 per month. As modified, said order is affirmed. The order of August 17, 1979, for attorneys' fees is reversed and the cause remanded for the filing by counsel for the respondent of an amended application for fees and for a hearing thereon. On the cross-appeal of respondent, the order of August 3, 1979, is affirmed.

Modified and affirmed in part; reversed and remanded for hearing in part; and affirmed in part.

McGLOON and CAMPBELL, JJ., concur.