*In re* MARRIAGE OF MARGUERITE E. PETRAMALE, Petitioner-Appellant and Cross-Appellee, and DONALD L. PETRAMALE, Respondent-Appellee and Cross-Appellant.

Second District  Nos. 80-292, 81-108 cons.

Opinion filed December 15, 1981.

Lee A. Marinaccio, John N. Pieper, and Marcia N. Johnson, all of Botti, Marinaccio and Wilkinson, of Wheaton, for appellant.

Keith E. Roberts, Rodney W. Equi, and Kristine K. Karlin, all of Donovan and Roberts, of Wheaton, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

This is an appeal by the petitioner, Marguerite Petramale Steindl, from those portions of the judgment of dissolution entered by the Circuit Court of Du Page County which related to the distribution of marital property. Respondent, Donald L. Petramale, cross-appeals that portion of the judgment ordering child support. Mr. Petramale moved to dismiss petitioner's appeal, and we ordered the motion taken with the case. Subsequent to the filing of the notices of appeal, respondent petitioned the trial court to modify the award of child support due to changed circumstances. The court dismissed his petition, and respondent appeals that order. The cases have been consolidated in this court.

Respondent and petitioner were married in 1955, and four children were born of the marriage. Respondent left the marital home in October 1977, and petitioner filed for a petition of dissolution on March 3, 1978.

At the December 1979 hearing, respondent testified that he was self-employed as an insurance salesman and broker and that he also served as a director of a savings and loan institution for which he received a $300-per-month attendance fee. Respondent had, previous to the time of trial, also, engaged in a photocopy service and supply venture known as PEP Supplies, but he testified that the business suffered a financial reverse in 1978 and that it had generated very little income in 1979. Petitioner attempted to show that the respondent was involved in a competing photocopy supply enterprise, D & D Copiers, by introducing the testimony of former customers of the first venture to the effect that their accounts were now serviced by D & D Copiers and that Mr. Petramale

gave out a D & D Copiers business card and had responded to a phone call to D & D Copiers. Respondent denied ownership in any copy supply business and denied receiving any money from such a business in 1979 except that which was owed him from the 1978 activities of PEP Supplies.

Petitioner had been a homemaker for much of the 24-year marriage. She testified that, although she had had full-time employment in the past, at the time of the hearing she was a part-time waitress earning approximately $65 to $80 per week. Her ability to work full-time was impeded by the needs of the one unemancipated child of the marriage, a 10-year-old boy.

Respondent and petitioner owned various pieces of real estate during the marriage: the marital residence in Bloomingdale, Illinois, which had a mortgage balance of approximately $78,000 at the date of the hearing; a condominium in Longboat Key, Florida which had been sold in February 1979, generating net proceeds of $15,000; and an apartment building in Glendale Heights, Illinois which had also been sold in 1979, producing $42,000 after payment of the outstanding mortgage.

The parties maintained numerous accounts in several financial institutions. Petitioner introduced evidence which showed that respondent had prior to the hearing, withdrawn a total of almost $100,000 from those accounts. But respondent testified that he had paid petitioner over $70,000 since her petition for dissolution was filed. This sum included money paid for the mortgage and utilities on the marital home.

The trial court entered its judgment for dissolution on March 7, 1980. It found, *inter alia*, that respondent had demonstrated a capacity to earn from $30,000 to $50,000 per year and ordered $150 per week child support to be paid to the petitioner, in whom custody of the minor child was placed. Maintenance and attorney's fees were denied both parties. All money held during the marriage in accounts at four named savings and loan associations was found marital property and ordered to be divided equally. The court ordered that the marital home in Bloomingdale be sold and the proceeds shared equally, finding that its fair cash value was between $140,000 and $190,000 with an outstanding mortgage balance of $45,000. The proceeds from the sales of the real estate in Florida and of the Glendale Heights apartment building were to be divided in equal shares.

Prior to entry of the judgment order, petitioner moved the trial court to clarify its finding that the marital property included "all money held during the marriage by the parties" in accounts at four named institutions. She alleged that she was uncertain of the court's valuation of the accounts, *i.e.*, whether the court intended that the parties share the balances remaining at the date of the hearing (she alleged there was "little, if any"

sums) or the balances prior to the husband's withdrawals between 1977-1979. The trial court ordered that the finding was based "upon the evidence at trial and clarification is not required."

Petitioner's post-trial motion for reconsideration, or in the alternative for a new trial, was denied on March 17, 1980. On April 3, 1980, she moved for a rule to show cause why respondent should not be held in contempt for his failure to comply with certain portions of the judgment order, including the provision that the savings accounts of the parties be divided equally. The trial court ordered that respondent turn over certain items of marital property on pain of a contempt citation but made no mention of the division of the savings accounts.

On April 16, 1980, petitioner filed her notice of appeal in this matter. On April 23, 1980, respondent's attorneys were personally served with the notice of appeal. On May 2, 1980, respondent filed his notice of cross-appeal. Five days later, he filed a motion to dismiss petitioner's appeal on the basis of estoppel. We ordered the motion taken with the case.

On August 8, 1980, respondent filed a petition in the trial court seeking a modification of the decree of child support. In the petition, he alleged that he was required to pay $150 per week child support pursuant to the judgment; that his weekly income was $395 at the time judgment was entered; that subsequent to the entry of judgment his income was reduced to $251 per week; and that the reduction in income constitutes a substantial change in circumstances warranting a modification in the amount of child support. Petitioner filed a motion to dismiss the petition, alleging that the trial court lacked jurisdiction in the matter because an appeal and cross-appeal had been filed and the amount of child support was at issue in the cross-appeal. The trial court granted the motion to dismiss on January 12, 1981. Respondent filed a timely notice of appeal.

I

We turn first to the appeal by the respondent of the trial court's dismissal of his petition to modify the judgment granting child support. Although the respondent had alleged a substantial change in circumstances, the trial court granted the petitioner's motion to strike, stating that the issue was on appeal.

■■ The general rule is that once a notice of appeal is filed, the trial court is divested of jurisdiction to enter any order involving a matter of substance, and the jurisdiction of the appellate court attaches instanter. (*Horzely v. Horzely* (1979), 71 Ill. App. 3d 542, 545, 390 N.E.2d 28, 31 (the trial court had no authority to enforce child support decree after notice of appeal and supersedeas bond was filed).) The trial court is thereby restrained from entering any order which would change or modify the

judgment or its scope, and from entering any order which would have the effect of interfering with the review of the judgment. *Dunn v. Dunn* (1979), 71 Ill. App. 3d 649, 653, 390 N.E.2d 136, 139 (the trial court may not bolster its decision by adding further grounds to the order from which appeal had been taken); *Shapiro v. Shapiro* (1969), 113 Ill. App. 2d 374, 252 N.E.2d 93 (trial court had jurisdiction to enforce decree of separate maintenance where it had expressly retained it).

■■ The trial court retains jurisdiction, however, to determine matters arising independent of, and collateral to, the judgment. (*Horzely; Shapiro.*) Inasmuch as some aspects of a case may be independent of, and collateral to, the matters raised on appeal, the trial court has power to hear and determine such questions. Thus, for example, the trial court retains jurisdiction to award temporary alimony pending appeal (*Horzely*) and appellate attorney's fees (*In re Marriage of Raidbard* (1980), 87 Ill. App. 3d 158, 408 N.E.2d 1021). In examining the authority of the trial court to award appellate attorney's fees, the court in *In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 1061, 419 N.E.2d 598, 600, stated:

"[I]t is readily apparent that an award of attorney's fees to defend a pending appeal necessarily involves an issue that arises after a notice of appeal is filed, and which therefore could not be embraced in the pending appeal. Thus, the award of attorney's fees to defend a pending appeal is not affected in any way by the appeal, and it is not dependent in any respect on the outcome of the appeal. Nor does the award of attorney's fees have the effect of interfering with the pending appeal."

Applying the *Giammerino* rationale to the case before us, it is irrefutable that the trial court's modification of the support decree would substantially affect the action of this court. If the trial court found facts which constituted changed circumstances justifying a reduction in payments, it would be unnecessary to decide the issue of whether that court erred in entering its prior order. But, unlike other final orders, a decree of child support is always modifiable. (Ill. Rev. Stat. 1979, ch. 40, par. 510.) Moreover, a trial court has inherent jurisdiction to consider future child support in a dissolution proceeding and need not expressly retain jurisdiction. (*Guest v. Guest* (1953), 351 Ill. App. 148, 114 N.E.2d 326.) Furthermore, the duration of the appellate process requires that petitioners have a forum available at all times in which support matters may be determined.

■■ We therefore hold that the trial court erred in striking respondent's petition and remand for consideration the modification petition. In so holding, we find it unnecessary to decide the merits of respondent's cross-appeal of the original support decree.

## II

We now consider respondent's motion to dismiss petitioner's appeal. He argues that the petitioner is estopped from appealing the judgment of dissolution because she accepted the benefits of that judgment. We noted above that petitioner brought a rule to show cause against respondent. She alleged that he had not complied with the decree of dissolution in that he failed to turn over to her possession one of their automobiles, monies in the savings accounts, half of an income tax refund, and the proceeds from the sale of the Florida condominium. The trial court entered the rule and respondent complied with the terms of the decree.

The issue is whether petitioner's actions constitute a release of errors in the judgment of the trial court. A litigant cannot attack a decree if, by reason of enjoying the benefits of the decree, the opposing party would be placed at a distinct disadvantage upon reversal. (*Lemon v. Lemon* (1958), 14 Ill. 2d 15, 150 N.E.2d 608 (no release where appellant accepted child support payments, and continued to live in marital home); *Gregory v. Gregory* (1974), 24 Ill. App. 3d 436, 321 N.E.2d 122 (no release where appellant accepted alimony under protest, placing funds into a separate bank account); *Kissin v. Kissin* (1961), 29 Ill. App. 2d 126, 172 N.E.2d 635 (appellant's conduct in accepting quitclaim deed, cash, and attorney's fees while refusing to make restitution for benefits received was a release of errors).) Distinct disadvantage to the opposing party is the key factor. See *Katz v. Katz* (1973), 10 Ill. App. 3d 39, 293 N.E.2d 904.

The courts have found such a disadvantage where the homestead rights of a party have been prejudiced by a sale of the marital home. (*Adams v. Adams* (1976), 44 Ill. App. 3d 656, 358 N.E.2d 734.) The acceptance of alimony and attorney's fees has also been found to constitute a waiver where the appellant would have had no way of refunding the payments should the judgment be reversed. (*Boylan v. Boylan* (1932), 349 Ill. 471, 182 N.E. 614.) But where the trial court can accommodate the interests of the appellee in distributing marital property, it has been held that the appellant's action in cashing a bond did not disadvantage the opposing party so as to justify invoking the release of errors doctrine. *Sullivan v. Sullivan* (1979), 68 Ill. App. 3d 242, 385 N.E.2d 860.

*Sullivan* resolves the issue before us. In our view, the trial court here could adjust the disposition of marital property such that the respondent is protected from dissipation of his assets should this court reverse. As petitioner points out, funds which were acquired from the sale of the marital home remain in a savings account. We find no distinct disadvantage to the respondent and deny his motion to dismiss the appeal.

## III

Turning to the merits of petitioner's appeal, we begin by noting that the trial court found that the outstanding balance on the mortgage of the

marital home was $45,000. But the evidence is clear, and both sides agree, that the actual balance due was $78,000. The trial court's findings of fact will not be disturbed on review unless manifestly against the weight of the evidence. (*In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065.) Although it may appear that the error was equally shared, where a marital asset has been improperly valued, the wiser course is to remand all interrelated property and support issues. (*In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 636, 397 N.E.2d 488, 495.) We therefore reverse the property disposition and remand for new proceedings.

Because the issue will necessarily arise on remand, we must consider petitioner's assertion that the trial court erred in failing to find the value of the joint bank accounts of the parties. See *City of Chicago v. Callender* (1947), 396 Ill. 371, 71 N.E.2d 643.

■■ The Illinois Marriage and Dissolution of Marriage Act requires that the trial court consider the value of the property set apart to each spouse. (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(2).) While it need not make specific findings of fact as to the value of each item in dispute, there must be before the court proper evidence of the value of the marital property. (See *In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 399 N.E.2d 1006.) In the case at bar there was testimonial and documentary evidence of the fact that the parties had kept various accounts in four banks but that these accounts had been closed by the husband. The husband also testified that he used these funds to pay marriage debts and that he distributed some of the money to the wife. In view of this evidence and in view of the equal distribution of the funds there was no error in the trial court's failure to find the amount of the value of the accounts. *In re Marriage of Donley* (1980), 83 Ill. App. 3d 367, 403 N.E.2d 1337; *In re Marriage of Smith* (1980), 90 Ill. App. 3d 168, 179, 412 N.E.2d 985, 994-95, *rev'd on other grounds* (1981), 86 Ill. 2d 518 (no specific findings necessary where the record is adequate to review the property decision).

In view of our disposition of the case, we need not treat petitioner's further arguments that the trial court failed to adequately consider the alleged dissipation of marital assets; the duration of the marriage; the age, health, and economic potential of each of the parties; and her contention that the trial court erroneously ruled on certain questions of evidence.

Accordingly, the property distribution order of the circuit court of Du Page County is reversed and the cause remanded for a new hearing.

Reversed and remanded.

NASH and VAN DEUSEN, JJ., concur.